For the reasons stated, the judgment is *affirmed.*

St. Alban's Episcopal Church *v.* United States (No. 3770)[1]

United States Court of Customs and Patent Appeals, November 13
1934

*James R. Ryan* for appellant.

*Joseph R. Jackson,* Assistant Attorney General (*Charles D. Lawrence,* Special
Assistant to the Attorney General, and *John F. Kavanagh,* special attorney, of
counsel), for the United States.

[Oral argument October 1, 1934, by Mr. Ryan and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT,
Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs
Court holding certain imported articles, described by the collector,
and also by the appraiser, at the port of Cleveland, Ohio, as "two sets
of altar and pulpit covers with attached hangings or frontals of
embroidered silk," dutiable as articles or fabrics embroidered at
90 per centum ad valorem under paragraph 1529 (a) of the Tariff Act
of 1930, as assessed by the collector at that port, rather than free of
duty as parts of altars under paragraph 1774 of that act, as claimed
by appellant.

Paragraph 1529 (a), so far as pertinent, and paragraph 1774 read
as follows:

PAR. 1529. (a) * * * fabrics and articles embroidered (whether or not
the embroidery is on a scalloped edge), * * * all the foregoing, and fabrics
and articles wholly or in part thereof, finished or unfinished (except materials
and articles provided for in paragraph 915, 920, 1006, 1111, 1504, 1505, 1513,
1518, 1523, or 1530 (e), or in Title II (free list), or in subparagraph (b) of this
paragraph), by whatever name known, and to whatever use applied, and whether
or not named, described, or provided for elsewhere in this Act, when composed
wholly or in chief value of filaments, yarns, threads, tinsel wire, lame, bullions,
metal threads, beads, bugles, spangles, or rayon or other synthetic textile, 90
per centum ad valorem. * * *

PAR. 1774. Altars, pulpits, communion tables, baptismal fonts, shrines, or
parts of any of the foregoing, and statuary (except casts of plaster of Paris,
or of compositions of paper or papier-mâché), imported in good faith for pre-
sentation (without charge) to, and for the use of, any corporation or association
organized and operated exclusively for religious purposes.

At the time the cause came on for trial in the Customs Court,
counsel for the importer stated that—

The issue involved in this case is whether or not certain articles called upon the
invoice as frontlet and frontals are properly *free of duty as parts of altars,* or
whether they are dutiable as assessed as embroidered articles under paragraph
1529 of the Tariff Act of 1930. I will call Mr. Root. (Italics ours.)

The importer introduced in evidence Exhibits I and II, and Illustrative Exhibit A.

Exhibits I and II consist of a photograph of an embroidered frontlet or superfrontal, and an embroidered frontal. Illustrative Exhibit A consists of a photograph of an altar showing the use thereon of frontlets or superfrontals, and frontals, and a photograph of an altar showing the use of a frontlet or superfrontal only.

In addition to Carl L. Root, acting appraiser at the port of Cleveland, who identified Exhibits I and II, and stated that the involved articles were embroidered, the importer called the following witnesses: Herman S. Sidener, rector of St. Alban's Episcopal Church, Cleveland Heights, Ohio; Louis E. Daniels, priest and canon of Trinity Cathedral, Cleveland, examining chaplain to the Bishop of Ohio, and a member of the commission on church building and furnishing of the synod of the Midwest, which comprises the diocese of Chicago; and James A. McFadden, a priest of the Roman Catholic Church and chancellor of the diocese of Cleveland.

Reverend Sidener testified, among other things, that—

* * * an altar in the Christian sense of the word is a table, the holy table on which the holy communion is celebrated, consisting of certain constituent parts, among them being *vestments of this character, of the identical character to these.*

Q. And will you state just what particular part *this vestment* plays in the constitution of an altar?—A. *This vestment lies* on the table which forms the beginning or basis of the altar, and is absolutely necessary to the celebration of the service.

* * * * * * *

Q. When does it become an altar?—A. It becomes an altar when it is properly prepared.

Q. And what are the items, please enumerate the items that are necessary to prepare an altar?—A. In addition to the holy table which is the basis, *there must be the proper vestments,* there *must be other ornaments such as a crucifix, a cross, and the candlesticks together with other parts.* I can enumerate them if you wish.

Q. Enumerate some others, if you will.—A. On the top of the holy table lie three cloths; the first cloth is known as the Cere cloth; anciently that was a cloth covered with wax to prevent demons arising from the stone and touching the upper cloth. Upon this lower or Cere cloth are two other cloths; *this cloth here is the second cloth.*

· Q. *Is that a part of the frontlet?*—A. *Yes, sir, this is sewed together forming the frontlet;* then above this frontlet and the Cere cloth is a third cloth which is known as the Fair Linen cloth which has to be on the altar at the time of service, it has to be, there is no exception.

* * * * * * *

Q. Will you state how the frontlet is attached to the table and the altar?—A. There are a number of ways of attaching it; a very common way is to have hooks on to the frontlet which fit on to nails on the altar itself; another way is to weight it down as in the case of this particular one having a hem in the back through which rods are inserted so it cannot be moved; some I have seen thumbtacked down to the holy table, the front of these.

Q. Then I understand from your description of the use to which the frontal and frontlet are put, that they are both essential to the formation of an altar?— A. That is right.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

X Q. The white linen top is the white which appears at the top of the photograph or illustration?—A. Yes, sir.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

X Q. Referring again to the frontlet and frontal involved in this case, are these on what you say is the table, are these there at all times?—A. They are.

X Q. Are they necessary at all times?—A. They are supposed to be according to the canons of the church; there may be variations of the law, of course, but according to the rules they are supposed to be there; *they are only changed to wash them and others put on,* and whenever they have only one color, the red is on all the year round.

X Q. Well, are these the color of red that you speak of?—A. This happens to be white.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

The WITNESS. *A frontal may or may not be on the altar, a frontlet is a shortened frontal, so the hanging of either one or both would fulfill the canon.*

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

X Q. So that a frontlet is there all the time, and a frontal may or may not be there?—A. That is right.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

R Q. Is it a fact, Dr. Sidener, there are various different services or rites or ceremonies of the church that require an altar differently accredited every one from the other?—A. Yes, sir.

R Q. And for each rite or other ceremony or each service there is a particular dressing and constituent parts of the altar put together for the purpose of performing that particular rite, ceremony or service; is that true?—A. That is true.

R Q. Therefore for each particular rite or service there is something which is an altar for each one?—A. That is right.　(Italics ours.)

## Father Daniels stated that Exhibits I and II—

\*　\*　\* are parts of the canonical altar necessary before it can be used for its designated purpose of the celebration of the Holy Communion; the place of the linen part is on the top of the holy table, and the silken part hangs down in front. According to ancient canon law the altar must, in order to be used as an altar, have three layers of linen covers on top; this is the middle one of those.

Mr. ABELES. Those, means what?

The WITNESS. Exhibit 1 is the middle one, not the lower or the upper; according to ancient custom that middle linen was ornamented with fringe or brocade or embroidered stuff on the front edge of it, and that is what this is.

and that—

An altar in the Christian sense of the word is a receptacle properly fitted for the elements of the Holy Communion during the time of their consecration, administration to the priest and the faithful, and their reservation for the sick.

He then stated that the dictionary definitions of an altar are sufficiently broad to cover "heathen altars and all sorts of religious cults through the whole world"; that the "veils [which he said included

Exhibits I and II], the candles and candlesticks, and the cross in that order" were essential in preparing the altar for its proper use.

Father McFadden stated that an altar is used "for the celebration of the sacrifice and the mass"; that Exhibits I and II "constitute the decoration" of the altar; and that—

An altar exists for the mass, and therefore there are rules laid down that it shall have certain things; the original of this frontal and frontlet is to bring out the beauty according to the various colors of the church which are five, and therefore well you might say a frontlet, or, as we call it, an antependium, has been originated as a part of the altar to conceal possibly the poverty of the structure; the structure might be of wood and simply four columns, and to make it look artistic and beautiful, these antependiums or frontals are placed; they may be of cloth, they have been of silver and magnificent in the course of the ages. *The frontal may be a permanent part of the altar; therefore the frontlet comes because it will not hide the beauty of the structure. You have, for instance, the Lord's Supper carved into the altar, and that is this real frontal,* but to keep the symbolism that the altar represents Christ, you say Christ is called the Rock, and we find in the Scriptures he is called the Rock, *therefore generally the altar is made of stone;* the permanent fixed altar of a stone, is always made of stone or marble, of course in the generic sense because of its symbolism of representing Christ; *it must be clothed with vestments,* it must be clothed with cloths, and we have the three linen cloths that cover it. (Italics ours.)

The Government submitted no evidence.

On this record, the trial court, in an opinion by Young, J., reviewed the following decisions of that court: *Frank A. L. Leahy* v. *United States,* T. D. 40956, G. A. 9011, decided June 10, 1925; *Joseph W. Husnick* v. *United States,* Abstract 49793, decided June 30, 1925; *Alfred W. Pannell, Rector, St. Paul's Episcopal Church* v. *United States,* T. D. 42321, decided July 18, 1927; *Frank A. L. Leahy* v. *United States,* Abstract 4346, decided November 16, 1927; *E. L. McConnaughey & Co., Inc.* v. *United States,* Abstract 8959, decided June 7, 1929; *International Statuary Co.* v. *United States,* T. D. 43983, decided April 16, 1930; *Christ Episcopal Church* v. *United States,* Abstract 13657, decided October 16, 1930. The court also referred to the decisions of this court in the cases of *Hogue* v. *United States,* 13 Ct. Cust. Appls. 587, T. D. 41437; *Daprato Statuary Co.* v. *United States,* 16 Ct. Cust. Appls. 233, T. D. 42840, decided June 11, 1928, and held that the imported articles were not free of duty as parts of altars under paragraph 1774, *supra,* but were dutiable as assessed by the collector under paragraph 1529 (a), *supra,* and, accordingly, overruled the protest. Judgment was entered accordingly.

In the case of *Frank A. L. Leahy* v. *United States,* T. D. 40956, it was held that certain "candlesticks, crucifixes, and other articles made of brass, * * * designed for use on altars, shrines, and otherwise for use in the services and ceremonies of Christian churches", were not parts of altars, shrines, or other articles named in paragraph 1674 of the Tariff Act of 1922, and, therefore, not free of duty under the provisions of that paragraph.

In the case of *Joseph W. Husnick* v. *United States, supra,* "so-called altar or tablernacle veils" were held to be free of duty under paragraph 1674 of the Tariff Act of 1922, as parts of altars.

In the case of *Alfred W. Pannell, Rector, St. Paul's Episcopal Church* v. *United States, supra,* it was held that "certain altar and pulpit hangings and a piece of lace to hang over the front of the colored hangings in front of the altar", were free of duty under paragraph 1674 of the Tariff Act of 1922 as parts of altars and pulpits. (In its decision in the case at bar, the court stated that the decision in the *Husnick* case, *supra,* was "inadvertently followed" in the *Pannell* case, *supra.*)

In the case of *Frank A. L. Leahy* v. *United States,* Abstract 4346, certain "carved wood panels", designed for use as parts of altars or shrines, were held to be free of duty under paragraph 1674 of the Tariff Act of 1922.

In the case of *E. L. McConnaughey & Co., Inc.* v. *United States supra,* it was held that certain "antependia," embroidered, used as vestments for the altar, and certain embroidered hangings for the pulpit, known as "drappo," did not "aid or contribute to the proper function of an altar or pulpit except that according to the canons of the Roman Catholic Church they must be on the altar or pulpit," and, therefore, were not free of duty under paragraph 1674 of the Tariff Act of 1922, but were dutiable as embroidered articles under paragraph 1430 of that act. In so holding, the court stated that paragraph 1674 did not provide for "articles used solely for religious purposes or articles used in connection with or present on the altar or pulpit at all times."

In the case of *International Statuary Co.* v. *United States, supra,* it was held that certain lamps, made of polished brass, attached to, and designed by the architect to be a part of, a Gothic altar, were structural parts thereof, and, therefore, were free of duty under paragraph 1674 of the Tariff Act of 1922.

Again in the case of *Christ Episcopal Church* v. *United States, supra,* the trial court held that "certain silk altar frontals and frontlets, pulpit hangings, * * * all braided and fringed," used, respectively, on altars and pulpits during certain services, but not *permanently* attached thereto, were not free of duty under paragraph 1674 of the Tariff Act of 1922, as parts of altars or pulpits, but were dutiable as assessed by the collector under paragraph 1430 of that act.

In the case of *Hogue* v. *United States, supra,* this court held that a sanctuary lamp, which, according to the canons of the Roman Catholic Church, was required to be "kept always burning before the altar at a distance from it, depending upon the 'structure of the building and the local conveniences,' not to serve any practical illuminating purpose, but to signify the presence of * * * the Lord," was not

372

"a piece, fraction, segment, or section of an altar," and was not "in any physical sense necessary to the completeness of such article"; that it did "not in any way aid or contribute to the proper function of an altar, except that, according to the canons of the Roman Catholic Church, both must be present in the sanctuary"; and that it was not a constituent, component, or integral part of an altar, and, therefore, not free of duty as a part of an altar under paragraph 1674 of the Tariff Act of 1922.

In the case of *Daprato Statuary Co.* v. *United States, supra,* this court, in an opinion by Smith, J., held that a marble, mosaic, inlaid floor, in 16 colors, used by St. Mary's Catholic Church of Dayton, Ohio, as the flooring of the sanctuary of that church was not free of duty under paragraph 1674 of the Tariff Act of 1922, as parts of an altar or of a shrine, but was dutiable under paragraph 233 of that act as a manufacture of marble. In so holding, the court said:

In its broad sense the term "altar" means a house of worship, a place devoted to prayer, and in its narrow sense the raised structure on which sacrifices are offered or incense burned as an act of worship. The word "shrine" may signify either a chapel dedicated to some holy personage or a thing, receptacle, case, tomb, or altar made venerable by some historic event or sacred association.

It is apparent that Congress did not intend to give free entry to churches, chapels, or to buildings set apart for religious uses, and that the terms "altar" and "shrine" were used by Congress in a restricted and strictly religious sense.

In our opinion paragraph 1674 had for its legislative purpose the granting of free entry to the altars or raised structures in churches upon which sacrifices or offerings are made as an act of worship and to that particular kind of altar or structure suggesting an altar which is dedicated to some holy personage or sacred entity and is called a shrine. Shrines and altars even in a restricted sense are, it is true, sometimes parts of the sanctuary and always parts of the churches in which they are found, but so are pews and pulpits. Altars and shrines, like pews and pulpits, have an individuality of their own that is distinctly different from the floor upon which they may happen to rest. Shrines and altars may exist as complete entities without a floor, and it is needless to say that neither an altar nor shrine is required to make up a floor. As was well said by Father Beckmeyer, shrines, altars, sanctuary benches, sanctuary lamps, walls, and flooring must be in harmony and there must be an accord in color, material, and architectural effect in order to make a sanctuary dignified, pleasing to the eye, and worthy of its religious purpose. That accord and that harmony serve to complete the entirety known as a sanctuary, but in accomplishing that result one element of the entirety does not become part of another and none of them loses its identity. Each element, whether it be shrine, altar, bench, or floor, retains its own form, color, material, name, and individuality and must be regarded as a distinct, separate entity.

On April 28, 1932, the trial court, on motion of counsel for appellant, vacated the judgment theretofore entered and granted a rehearing of the cause, for the purpose of permitting appellant to introduce additional evidence. On June 21, 1932, appellant introduced the testimony of two witnesses: C. H. Carfora, an archbishop, and head of all the Old Roman Catholic Churches in the United

States, Canada, and Mexico, and Sergium Snegiriff, a priest of the "Russian Orthodox Church, Greek Catholic."

Father Carfora stated that, except in emergencies, the canons of his church required the use of certain vestments on the altar, including an antependium or frontal and a frontlet or superfrontal; that those vestments were of different colors depending upon the seasons of the year and the particular service being celebrated; that red was used for martyrs and for Pentecost, violet for Lent, green for Advent, and white for "first-class feasts"; and that candlesticks and crucifixes were also essential parts of an altar.

Father Snegiriff stated that the canons of his church required the use of certain vestments on the altar, except in emergencies, including frontals and frontlets of the general character of those here involved.

The Government submitted no evidence.

In its second decision, the trial court, in an opinion by Keefe, J., again held that the involved articles were not parts of altars or pulpits within the meaning of paragraph 1774, *supra*, and, accordingly, overruled the protest.

There was no evidence submitted to the trial court relative to the pulpit coverings and attached hangings. Accordingly, as to those articles, we must hold that there is no evidence of record to overcome the presumption of correctness attending the collector's classification.

We think it is clear from the record in the case that, although the canons of the churches represented by the witnesses for appellant, require the use of the imported altar frontals and frontlets or superfrontals, or others of like colors, on certain occasions and during certain devotional exercises, they are covers or vestments for altars and are used for the purpose of ornamentation.

It appears from the evidence that if the front of an altar, as constructed, is sufficiently ornamental, frontals, such as those here involved, are not required by the canons of the church. Under such circumstances, however, frontlets or superfrontals may be used, because, as stated by Father McFadden, they "will not hide the beauty of the structure."

We quote the following from the Catholic Encyclopedia, 1913, prepared by the Encyclopedia Press, Inc., New York, under the auspices of The Knights of Columbus Catholic Truth Committee, volume I, page 353:

It [referring to "altar-frontal"] is evidently intended as an ornament of the altar (Rubr. Gen. Miss., tit.). Hence if the altar is made of wood or marble, and its front is beautifully painted or decorated, or if the table is supported by columns, and a reliquary is placed under it, it may be considered sufficiently ornamented, and the antependium would not be necessary; nevertheless, even in such cases, on solemn occasions more precious and elaborate ones should be used (Caerem. Episc. I., xii, 11).

It also appears from the record that frontals and frontlets or superfrontals are of different colors—violet, red, black, white, and green, and the color used depends upon the season of the year, or the particular devotional exercise being celebrated.

It is evident, therefore, that although the canons of a church may require the use of frontals and frontlets or superfrontals of the colors of those here involved on some occasions, they are not only not required to be used, but it is not permissible to use them, on other occasions. When the laws of the church require the use of white or of green frontals and frontlets or superfrontals, the involved covers or vestments or others of like colors may be used. So, from a canonical point of view, the involved green and white covers or vestments are not always considered parts of altars. But, however that may be, it is clear from what has been said that, although the involved articles may be used on altars on proper occasions, they are not, in a tariff sense, constituent, component, or integral parts of such altars. See *United States* v. *Willoughby Camera Stores, Inc.*, 21 C. C. P. A. (Customs) 322, T. D. 46851, and cases therein cited.

Paragraph 1774, *supra*, is limited, as was paragraph 1674 of the Tariff Act of 1922, as stated by Judge Tilson in the *McConnaughey* case, *supra*, to the articles enumerated therein and parts thereof. It does not provide for all articles used solely for religious purposes, when "imported in good faith for presentation (without charge) to, and for the use of, any corporation or association, organized and operated exclusively for religious purposes." Why the Congress did not so provide, we are not advised, nor is it of concern in the determination of this issue.

For the reasons stated, the judgment is *affirmed*.