DAPRATO STATUARY Co. *v.* UNITED STATES (No. 4152)[1]

[1] C. A. D. 13

United States Court of Customs and Patent Appeals, October 31, 1938

*Walden & Webster* (*J. L. Klingaman* of counsel) for appellant.

*Charles D. Lawrence*, Acting Assistant Attorney General (*Richard E. Fitz-Gibbon*, special attorney, of counsel), for the United States.

[Oral argument October 4, 1938, by Mr. Klingaman and Mr. FitzGibbon]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:[2]

This is an appeal from a judgment of the United States Customs Court, Third Division.

Merchandise, consisting of marble slabs (over one and one-half inches and not over two inches in thickness), an ornamental wall facade (in chief value of marble), mosaic panels (composed wholly or in chief value of glass), panels of Venetian mosaics (composed wholly or in chief value of glass), and an arch (in chief value of onyx), which, when assembled after importation, composed an ornamental wall facade or reredos, was assessed for duty by the collector at the port of New York under the Tariff Act of 1930 as follows: The marble slabs at 19 cents per superficial foot under paragraph 232 (b); the ornamental wall facade, in chief value of marble, and the onyx arch, as a manufacture of onyx, at 50 per centum ad valorem under paragraph 232 (d); and the mosaic panels mounted in the ornamental facade and the panels of Venetian mosaics at 60 per centum ad valorem under paragraph 218 (f).

A "main altar," consisting of a mensa, predella, and tabernacle, and a "Crucifixion Group," included in the three importations here involved, were admitted free of duty—the altar under the provision for altars, etc., contained in paragraph 1774 of the Tariff Act of 1930, and the "Crucifixion Group" as statuary under the same paragraph.

The importer protested the collector's assessment of the parts constituting the reredos, claiming that they were parts of an altar, and free of duty as such under the provisions of paragraph 1774, *supra*.

The statutory provisions in question read:

PAR. 232. (b) Slabs and paving tiles of marble, breccia, or onyx: Containing not less than four superficial inches, if not more than one inch in thickness, 8 cents per superficial foot; if more than one inch and not more than one and one-half inches in thickness, 10 cents per superficial foot; if more than one and one-half inches and not more than two inches in thickness, 13 cents per superficial foot; in addition thereto on all the foregoing, if rubbed in whole or in part, 3

[2] JACKSON, Judge, took no part in the consideration or decision of this case.

cents per superficial foot, or if polished in whole or in part (whether or not rubbed), 6 cents per superficial foot.

(d) Marble, breccia, and onyx, wholly or partly manufactured into monuments, benches, vases, and other articles, and articles of which these substances or any of them is the component material of chief value, not specially provided for, 50 per centum ad valorem.

Par. 218. (f) Table and kitchen articles and utensils, and all articles of every description not specially provided for, composed wholly or in chief value of glass, blown or partly blown in the mold or otherwise, or colored, cut, engraved, etched, frosted, gilded, ground (except such grinding as is necessary for fitting stoppers or for purposes other than ornamentation), painted, printed in any manner, sandblasted, silvered, stained, or decorated or ornamented in any manner, whether filled or unfilled, or whether their contents be dutiable or free, 60 per centum ad valorem.

Par. 1774. Altars, pulpits, communion tables, baptismal fonts, shrines, or parts of any of the foregoing, and statuary (except casts of plaster of Paris, or of compositions of paper or papier-mâché), imported in good faith for presentation (without charge) to, and for the use of, any corporation or association organized and operated exclusively for religious purposes.

It appears from the record that the involved merchandise, together with "the mensa, predella, and tabernacle," was "imported in good faith for presentation (without charge) to, and for the use of," St. Patrick's Church, Oliphant, Pa., a "corporation or association organized and operated exclusively for religious purposes."

The sole issue in the case is whether the imported articles, constituent parts of a reredos, are, in a tariff sense, parts of the "main altar" with which the reredos was designed to be used.

It appears from Illustrative Exhibit A, a photograph showing the mensa, predella, tabernacle, and reredos in St. Patrick's Church, that the reredos is in the rear of the "main altar," and covers the entire rear wall of an arched chamber in the sanctuary. At the closest point, the reredos is twenty-six inches from the mensa, and is not physically attached thereto. As stated by appellant's witness Fred E. Nadler—

The Witness. The reredos is not directly attached to the mensa, but it is through a platform which extends through to the reredos, and also by the steps and platform which are placed there, so the celebrant may place the monstrance in the niche or exposition throne.

Mr. Klingaman. And the rest of it you described up against the wall, all that is attached to each other and now forms one piece?

The Witness. Yes.

The exposition throne or niche in which the monstrance is placed during the "Forty Hours Devotion" and the "Benediction of the Blessed Sacrament" takes the place of a "ciborium" or "baldachino."

"Ciborium" is defined in Webster's New International Dictionary as—

1. A canopy, usually free and supported on four columns, covering the high altar, or, very rarely, a secondary altar.

2. R. C. Ch. The coffer case, or other receptacle in which the Host is kept; a pyx.

In the same authority we find—

*baldachin. n.* Also *baldachine, baldachino, baldaquin,* etc. * * *

2. A canopy of some fabric (originally of baldachin) borne in processions placed over an altar, etc.

3. *Arch.* A structure in form of a canopy, supported by columns, suspended from the roof, or projecting from the wall, generally placed over an altar; as, the *baldachin* in St. Peter's at Rome is about 95 feet high.

Each of the importer's two witnesses, Mr. Fred E. Nadler (from whose testimony we have heretofore quoted) and Mr. Frank A. Berry (an ecclesiastical architect), testified that the reredos and the parts composing the same were essential parts of the altar, and that a reredos permitted embellishments which were used in most instances. The witness Berry stated that—

the reredos is part of the altar that *takes the place of the baldachino.* In other words we have either a reredos or a baldachino. This particular altar is what we term a liturgical altar, where the mensa is separated from the reredos. [Italics ours.]

It further appears from the testimony of that witness that many Catholic churches have no reredos, but that in the absence of a reredos—

You must have a canopy in the form of a baldachino or a ciborium, or there must be some canopy over that altar or it is not liturgical.

We quote further from his testimony:

X Q. Have you been to the Benediction of the Blessed Sacrament, and seen the monstrance put right on top of the tabernacle?—A. Yes.

X Q. Suppose we have such an altar placed up against the brick wall, is it a complete altar?—A. No, it is not.

X Q. What in your opinion is necessary to make it complete?—A. The *canopy for the monstrance.*

X Q. I assume we have a canopy on the top of the tabernacle in which the monstrance could be placed. Then, in your opinion is that a complete altar?—A. No, because it may be complete, but that is not a true Catholic altar. [Italics ours.]

The particular reredos here involved is described in the testimony of Henry H. Crum, an examiner at the port of New York, who testified for the Government, as follows:

* * * This reredos or facade was removed from the mensa at the closest point by 26 inches by actual measurement. Between the two was a platform on which a man could stand to reach up to the niche back of it, three or four steps going down either way from this platform, and this is made of rather a cheap marble different from the reredos or the altar that was interposed in that 26 inch space between the mensa and predella part of the altar, and that facing or reredos in the rear. Now there was—I don't think we are interested in the rest of the items because it is not under protest—but this facing, so called facing or reredos was made of marble and onyx, liberally inlaid in relief with columns, niches, and arches. There was a large central arched niche, three arched niches on each side of that, and an arched niche below the large central niche. The

upper central arched niche had a background of glass Venetian mosaic against which in the niche set a crucifixion group, sculptured in marble, consisting of the cross and corpse [corpus], two figures. Below the cross, the niche below that was empty. The three niches on either side of the large central niche were filled by a mosaic picture in each case. In the three niches to the left, the central one was a floral design and the ones on the other side were figures of saints and on the opposite side, the same way, floral design in the center niche and figures of saints in the other two niches.

On this record the trial court, in an opinion by Keefe, Judge, Evans, Judge, concurring, after fully analyzing the testimony in the case, stated:

The evidence before us discloses that the reredos is not necessarily essential to the proper functioning of an altar, even in the Catholic church, but, when it. is used, it contains the "niche" for the monstrance, which is an essential part of an altar in that church.

The court quoted definitions of a reredos from the Century Dictionary and Cyclopedia and Webster's New International Dictionary; stated that, as commonly understood, a reredos is not in any physical sense a part of an altar; and held, on the authority of *Hogue* v. *United States*, 13 Ct. Cust. Appls. 587, T. D. 41437, that the involved merchandise was not free of duty as parts of an altar, and, accordingly, overruled the protests.

A "reredos" is defined by the authorities relied upon by the trial court as follows:

2. A screen or a decorated part of the wall behind an altar in a church, especially when the altar does not stand free, but against the wall * * *. [The Century Dictionary and Cyclopedia.]

1. *Arch.* a *Eccl.* A screen or partition wall, usually ornamental, behind an altar * * *. [Webster's New International Dictionary.]

Counsel for appellant concede in their brief that an altar may be complete without a reredos. They contend, however, than when a reredos accompanies an "altar table" and contains parts such as the exposition throne, as in the instant case, the reredos is an essential part of the altar, and that, in the case at bar, the reredos and the altar table "complement" each other.

We are unable to concur in the views urged upon us by counsel for appellant.

It is true that the involved reredos contains an exposition throne or niche where the monstrance is placed during the "Forty Hours Devotion" and the "Benediction of the Blessed Sacrament" in the Roman Catholic Church; however, as clearly appears from the record, a reredos is not necessary during any Roman Catholic Church service— a canopy over the monstrance which may be placed on the tabernacle being sufficient during the "Forty Hours Devotion" and the "Benediction of the Blessed Sacrament."

The question before us, however, is not what constitutes an altar from a canonical point of view, but rather whether the reredos, of which the involved articles are constituent parts, is an integral, constituent, or component part of an altar in a tariff sense; *Hogue* v. *United States, supra; United States* v. *Willoughby Camera Stores, Inc.*, 21 C. C. P. A. (Customs) 322, T. D. 46851; *St. Alban's Episcopal Church* v. *United States*, 22 C. C. P. A. (Customs) 366, T. D. 47387. The answer to that question, we think, must be in the negative.

An "altar" is defined in Webster's New International Dictionary as—

1. A raised structure * * * on which sacrifices are offered or incense burned in the worship of a deity, the spirit of a deceased ancestor, or the like * * *.

2. In the Christian church a tablelike construction used in celebrating the Holy Eucharist; the communion table.

In the case of *Daprato Statuary Co.* v. *United States*, 16 Ct. Cust. Appls. 233, 235, T. D. 42840, this court, in considering the provision for altars and parts thereof in paragraph 1674 of the Tariff Act of 1922, the predecessor of paragraph 1774, *supra*, stated that the term "altar" was used by the Congress in a "restricted and strictly religious sense," and that, in the opinion of the court—

* * * paragraph 1674 had for its legislative purpose the granting of free entry to the altars or raised structures in churches upon which sacrifices or offerings are made as an act of worship and to that particular kind of altar or structure suggesting an altar which is dedicated to some holy personage or sacred entity and is called a shrine. Shrines and altars even in a restricted sense are, it is true, sometimes parts of the sanctuary and always parts of the churches in which they are found, but so are pews and pulpits. Altars and shrines, like pews and pulpits, have an individuality of their own that is distinctly different from the floor upon which they may happen to rest. Shrines and altars may exist as complete entities without a floor, and it is needless to say that neither an altar nor shrine is required to make up a floor. As was well said by Father Beckmeyer, shrines, altars, sanctuary benches, sanctuary lamps, walls, and flooring must be in harmony and there must be an accord in color, material, and architectural effect in order to make a sanctuary dignified, pleasing to the eye, and worthy of its religious purpose. That accord and that harmony serve to complete the entirety known as a sanctuary, but in accomplishing that result one element of the entirety does not become part of another and none of them loses its identity. Each element, whether it be shrine, altar, bench, or floor, retains its own form, color, material, name, and individuality and must be regarded as a distinct, separate entity.

A "reredos" is an ornamental screen or a "decorated part of the wall *behind an altar* in a church" [Century Dictionary and Cyclopedia]. [Italics ours.]

In the case at bar the reredos was designed to contain the exposition throne or niche in which the monstrance is placed during certain church services. Such an arrangement probably makes for convenience, and undoubtedly adds to the beauty of the sanctuary, but

surely, because an ecclesiastical architect and the church desire such an arrangement, the reredos does not, for that reason, become an integral, constituent, and component part of the altar in a tariff sense. The most that can be said in favor of the position taken by counsel for appellant is that, in this particular arrangement, the reredos is designed to be used in connection with, but not as an integral part of, the "main altar."

We are of opinion, therefore, that the trial court was right in holding that the reredos and the altar are separate and independent entities in a tariff sense, and that the involved parts of the reredos are not free of duty as parts of altars within the purview of paragraph 1774, *supra*.

The judgment is *affirmed*.

GARRETT, Presiding Judge, dissenting.

