(C. D. 330)

BUDDHIST CHURCH OF SAN FRANCISCO *v.* UNITED STATES

United States Customs Court, First Division

(Decided May 7, 1940)

*Lawrence & Tuttle* (*George R. Tuttle* and *Charles F. Lawrence* of counsel) for the plaintiff.

*Webster J. Oliver*, Assistant Attorney General (*Richard H. Welsh*, special attorney, and *Joseph A. Howard, Jr.*, junior attorney), for the defendant.

Before BROWN and CLINE, Judges

BROWN, Judge: This is a suit against the United States for the recovery of customs duties claimed to have been improperly exacted on certain doors, screens, decorations, etc., imported for presentation to and for the use of the plaintiff, a corporation organized under the laws of the State of California and operated exclusively for religious purposes. Duty was assessed thereon at various rates under the provisions of the Tariff Act of 1930 according to the component material of chief value, and the articles are claimed to be entitled to free entry under the provision in paragraph 1774 of the said act for—

Altars * * * or parts of any of the foregoing * * * imported in good faith for presentation (without charge) to, and for the use of, any corporation or association organized and operated exclusively for religious purposes.

It appears from the record that one K. Nakabayashi, an officer of the plaintiff church and a member of the Buddhist faith, donated the articles at bar to the church in memory of a deceased uncle. There is no question, on the record presented, but that the articles were imported in good faith for presentation without charge to and for the use of a corporation organized and operated exclusively for religious purposes. The only question at issue is whether or not the articles constitute parts of altars.

The chapel for which the articles were imported is located in San Francisco. Photographs have been introduced in evidence herein from which it appears that the merchandise essentially consists of sliding and folding screens and ornamental carved woodwork which, when set in place, divide the part of the chapel where the congregation sits from that where the ministers preside during services.

Rev. S. Nagatomi, minister in charge of the plaintiff church, testified that according to his interpretation of the rules of the Buddhist Church the altar thereof embraces all that part of the chapel referred to above where the ministers preside at the services, including the screens and ornamental carved woodwork here in issue; that all Buddhist churches follow the same construction; that Buddhist services may be conducted without the use of the articles at bar but in such case they are not formal services according to the rules of the mother church, but are termed "informal," and that the screens and other objects in issue represent the Buddhist conception of paradise.

It seems clear that according to the rules of the Buddhist Church the articles in question here are parts of the Buddhist sanctuary or altar in the religious sense. In that situation if it were a new question we would be inclined to sustain the protest as within the intent of Congress to admit them free under the claimed paragraph.

However, the authorities have given this provision a narrower interpretation by which we are bound to restrict the word "altar" to what is called the tariff sense, excluding such articles. It was said in the opinion of Hatfield, J., concurred in by all the participating members of the Court of Customs and Patent Appeals, in *Daprato Statuary Co.* v. *United States*, 26 C. C. P. A. (Customs) 173, C. A. D. 13:

> The question before us, however, is not what constitutes an altar from a canonical point of view, but rather whether the reredos, of which the involved articles are constituent parts, is an integral, constituent, or component part of an altar in a tariff sense * * *.

Webster's New International Dictionary defines "altar" as—

> 1. A raised structure (as a block, pile of blocks, pillar, stand, or the like) on which sacrifices are offered or incense burned in the worship of a deity, the spirit of a deceased ancestor, or the like; in broader usage, any structure or place (whether raised, as the Greek *bomos*, Latin *ara*, *altare*, or level with or below the ground or floor, as the Greek *eschara*, *hestia*, Latin *scrobis*, *focus*) serving as a place of sacrifice.

In Funk & Wagnalls New Standard Dictionary it is defined as—

1. Any raised place or structure on which sacrifices may be offered or incense burned as an act of worship * * *.

The meaning of the term "altar" as used in the tariff act was the subject of consideration in the opinion written by Smith, J., for the Court of Customs and Patent Appeals in an earlier case of *Daprato Statuary Co.* v. *United States*, 16 Ct. Cust. Appls. 233, T. D. 42840, wherein, among other things, it was said:

In its broad sense the term "altar" means a house of worship, a place devoted to prayer, and in its narrow sense the raised structure on which sacrifices are offered or incense burned as an act of worship. The word "shrine" may signify either a chapel dedicated to some holy personage or a thing, receptacle, case, tomb, or altar made venerable by some historic event or sacred association.

It is apparent that Congress did not intend to give free entry to churches, chapels or to buildings set apart for religious uses, and that the terms "altar" and "shrine" were used by Congress in a restricted and strictly religious sense.

In our opinion paragraph 1674 had for its legislative purpose the granting of free entry to the altars or raised structures in churches upon which sacrifices or offerings are made as an act of worship and to that particular kind of altar or structure suggesting an altar which is dedicated to some holy personage or sacred entity and is called a shrine. Shrines and altars even in a restricted sense are, it is true, sometimes parts of the sanctuary and always parts of the churches in which they are found, but so are pews and pulpits. Altars and shrines, like pews and pulpits, have an individuality of their own that is distinctly different from the floor upon which they may happen to rest. Shrines and altars may exist as complete entities without a floor, and it is needless to say that neither an altar nor shrine is required to make up a floor. As was well said by Father Beckmeyer, shrines, altars, sanctuary benches, sanctuary lamps, walls, and flooring must be in harmony and there must be an accord in color, material, and architectural effect in order to make a sanctuary dignified, pleasing to the eye, and worthy of its religious purpose. That accord and that harmony serve to complete the entirety known as a sanctuary, but in accomplishing that result one element of the entirety does not become part of another and none of them loses its identity. Each element whether it be shrine, altar, bench, or floor, retains its own form, color, material, name, and individuality and must be regarded as a distinct, separate entity.

Paragraph 1674 of the Tariff Act of 1922, mentioned by the court, was the predecessor of paragraph 1774 of the existing tariff act, and so far as they refer to altars and parts thereof the language of both paragraphs is the same.

Viewed in the light of the foregoing definitions and the decision of the Court of Appeals in the *Daparato* cases it is manifest that the screens, etc., here involved are not parts of altars within the meaning of that term as used in paragraph 1774. Witnesses have testified on behalf of the plaintiff herein that during the course of Buddhist services incense is burned by the minister or ministers on a table before an image or a shrine. We are therefore constrained to hold

that the imported screens and ornamental woodwork are not integral, constituent, or component parts of either the table on which the incense is burned or the image or shrine before which it is burned, which would seem to be the only articles used in the services described which would fall within the meaning of the term "altar" in a tariff sense.

The protest is therefore overruled and judgment will issue in favor of the defendant.