(C.D. 2515)

MAHER & COMPANY *v.* UNITED STATES

United States Customs Court, Second Division

(Decided February 23, 1965)

*H. Gordon Hartman* for the plaintiff.

*John W. Douglas*, Assistant Attorney General (*Harold L. Grossman*, trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: By timely protest, plaintiff herein controverts the classification by the collector of customs of certain merchandise

described in said protest as "Bronze Screens" as articles or wares, not specially provided for, composed wholly or in chief value of bronze, in paragraph 397 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, and the assessment of duty thereon at the rate of 19 per centum ad valorem, plus a copper tax assessment of 1.275 cents per pound, by virtue of section 4541 of the Internal Revenue Code (26 U.S.C. § 4541), as modified by the Sixth protocol, *supra*.

It is the contention of plaintiff that said items of merchandise should properly have been granted entry free of customs duty within the provision for altars, pulpits, and so forth, imported in good faith for the use of any corporation for religious purposes, in paragraph 1774 of said act (19 U.S.C. § 1201, par. 1774), as modified by the Annecy Protocol to the General Agreement on Tariffs and Trade, 84 Treas. Dec. 403, T.D. 52373, supplemented by Presidential proclamation, 85 Treas. Dec. 138, T.D. 52476. The copper tax assessment pursuant to the Internal Revenue Code is not controverted.

The pertinent text of the statutes involved is here set forth.

Paragraph 397 of the Tariff Act of 1930, as modified by the sixth protocol, *supra:*

Articles or wares not specially provided for, whether partly or wholly manufactured:

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

Composed wholly or in chief value of iron, steel, copper, brass, nickel, pewter, zinc, aluminum, or other base metal (except lead), but not plated with plantinum, gold, or silver, or colored with gold lacquer:

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

Not wholly or in chief value of tin or tin plate:

Carriages, drays, * * *

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

Other, composed wholly or in chief value of iron, steel, brass, bronze * * * 19% ad val.

Paragraph 1774 of said act, as modified by the Annecy protocol, *supra:*

Altars, pulpits, communion tables, * * * or parts of any of the foregoing, * * * imported in good faith for presentation (without charge) to, and for the use of, any corporation or association organized and operated exclusively for religious purposes_____ Free

The record upon which this case has been submitted to the court for determination consists of a stipulation of facts entered into by the parties and three exhibits offered on behalf of plaintiff and received in evidence by the court.

We set forth below the agreement of the parties—

I. Plaintiff has abandoned as much of the within protest as pertains to the Article described as Baptistry Gate.

II. Plaintiff reurges and maintains its protest as to the remaining articles mentioned in said protest and in connection therewith the parties stipulate:

(a) That plaintiff would produce as one of its witnesses, Mr. Irvin Joseph (Irvin J.) Kohler, a duly licensed and practicing architect in the state of Louisiana, that the said Mr. Kohler is presently engaged in the private practice of architecture in the City of New Orleans, and that he has continuously practiced in that City since 1955; that he received from Tulane University his Bachelor's degree in architecture in 1952, and his Master's degree in architecture from Massachussetts [sic] Institute of Technology in 1954; that Mr. Kohler was a consulting architect to the Louisiana State Building Authority in 1955 and is and has been a consulting Architect to the Italian Trade Commission, New Orleans, since 1960; that Mr. Kohler is a member of the American Institute of Architects, the American Society of Testing Materials, the Acoustical Society of America; that some of his principal works in the City of New Orleans include St. Raphael Parish Church, St. Dominic Parish Church, St. John Vianney Church, St. Raymond School, St. Joan of Arc School, St. Rita School and Convent.

(b) That the Mr. Kohler designed the entire structure and appointments of St. Dominic's Church, and more particularly the articles under protest in the instant case;

(c) That the attached blueprint designated as Plaintiff's Exhibit No. 1 [received in evidence as plaintiff's exhibit 1] (the same being further identified as "Sheet 4 of 51") is a true and correct duplicate original of the said excerpt of the plans of St. Dominic's Church and that the location of the articles in protest have been designated by solid yellow lines thereon by Mr. Kohler whose signature is duly inscribed thereon, and that said Plaintiff's Exhibit No. 1 correctly and accurately displays the location of said articles as they are presently (and permanently) situated in said Church.

(d) That the attached blue line print designated as Plaintiff's Exhibit No. 2 [received in evidence as plaintiff's exhibit 2] is from the files and workpapers of Mr. Kohler relating to the design of the interior of St. Dominic's Church and substantially and fairly reflects the front (or congregation's) view of the main altar of said church and further that the smaller drawing appearing on said sheet designated by the caption "Section" substantially and fairly reflects a side view of the center portion of the article of which the crucifix is a component part.

(e) That Mr. Kohler would further testify that the attached photograph designated as Plaintiff's Exhibit No. 3 [received in evidence as plaintiff's exhibit 3] portrays the view of the main altar of said church as same is seen by the congregation and fairly and substantially depicts and represents the same area as is designated by Plaintiff's Exhibit No. 2 (above).

(f) That Mr. Kohler would further testify that the bronze articles under protest in this matter are and were always an integral part of his total design concept of the main altar of said church, opposed to being designed as accessory thereto, and more particularly that said articles are designed to provide a visual extension of the tabor (and/or tabernacle, itself an integral part of said altar).

(g) That said articles are placed, as will be more fully and clearly seen by reference to Plaintiff's Exhibit No. 1, in such a location as to permit the celebration of Mass from either side of said altar, and that the crucifix is embodied in the center portion of the design of said articles so as not to obscure the celebrant, should he celebrate Mass facing his congregation.

(h) That plaintiff would produce the Chancellor of the Archdiocese of New Orleans who would testify that the entire design of St. Dominic's Church of necessity had to be (and actually was) approved as to its canonical and liturgical correctness before it would be accepted and construction of said work was authorized.

(i) That the said Chancellor (Right Reverend Monsignor Charles J. Plauché) would further testify that there is at the center of said articles, as an integral part thereof, a crucifix (i.e., a cross with the crucified body of Christ attached thereto) and that a crucifix is an essential and necessary part of the altar of a Roman Catholic Church for the celebration of Mass, but that the architectural devise or form by which this is accomplished varies from church to church according to its design.

It was further stipulated and agreed by the parties hereto that—

1. The phrase "main altar," as used in stipulation refers to the predella, the altar, and the item of merchandise.

2. The bronze screen in issue is not affixed to the altar.

3. No sacrifices are offered as an act of worship upon the bronze screen in controversy.

4. The predella, referred to, *supra*, is the platform or steps upon which an altar is placed.

As illustrated by the plaintiff's three exhibits in evidence, the imported bronze screen in controversy extends the width of the chancel of St. Dominic's Church in New Orleans, is 5 feet distant from the back of the altar, and consists of four panels on each side of a large center panel in the middle of which and extending upward is a crucifix. The eight side panels are integrated with the center panel by intervening cutout figures of saints affixed to crosspieces connecting the various structures. From the facts agreed upon, the imported screen is located so that Mass may be celebrated by the priest either standing in front of the altar with his back to the congregation or in back of the altar and facing the congregation.

It is the position of plaintiff herein that inasmuch as for the celebration of Mass the physical presence of a crucifix is necessary, and inasmuch as the crucifix forming an integral part of the central portion of the imported screen was designed to serve said purpose, the screen bearing the crucifix should be considered to be part of the altar. Further, plaintiff states in its brief—

Ancillary to its purpose of providing the necessary crucifix, the screen was designed to serve as a visual extension of the tabor or tabernacle. * * *

The provisions of paragraph 1774 of the Tariff Act of 1930, as modified, relied upon by plaintiff, and the contentions urged by plaintiff in seeking the benefit of the free entry provision, were given consideration by our appellate court in connection with related importations in two comparatively recent cases, to which we shall refer in detail, *infra*.

In *United States* v. *Buck's, Inc.*, 47 CCPA 12, C.A.D. 721, the appellate court reversed the decision of the trial court in holding window niches to be parts of altars and free of duty within the provisions of paragraph 1774 of the Tariff Act of 1930. In the course of its decision, in the *Buck's* case, the appellate court stated—

The imported window niches are carved wooden structures, the top halves serving as window frames with round arched tops, to frame stained glass windows already present in the church, the bottom halves providing the niches proper, having shelves at the bottom and carved wood lattices or canopies at the top so that they will receive and frame vases of flowers or other church accessories. The wood carving is of a design harmonious with that of the altar, the reredos, pulpit and other woodwork of the church. The reredos is against the rear wall behind the altar and incorporates a stained glass window therein, the niches being in the flanking and angularly disposed walls to the right and left of the altar. As parts of the building they are not attached either to the altar or the reredos, except in the sense that things attached to the same building are attached to each other.

The court then made reference to the cases of *Hogue* v. *United States*, 13 Ct. Cust. Appls. 587, T.D. 41437, *Daprato Statuary Co.* v. *United States*, 16 Ct. Cust. Appls. 233, T.D. 42840, and *Id.* v. *Id.*, 26 CCPA 173, C.A.D. 13, in the following language—

For example, in *Hogue* v. *United States*, 13 Ct. Cust. Appls. 587, T.D. 41437, decided February 25, 1926, under the identical wording, insofar as it is pertinent, of paragraph 1674, Tariff Act of 1922, the predecessor of this court held, in overruling the importer's protest, that a sanctuary lamp, while required to be kept burning before the altar, was not in any physical sense a part of the altar. The lamp and the altar were considered as separate entities, each performing "its proper, ordinary and separate functions."

In *Daprato Statuary Co.* v. *United States*, 16 Ct. Cust. Appls. 233, T.D. 42840, decided in 1928, the same court was confronted with the importer's contention that a marble sanctuary floor, upon which the altar rests, was a part of an altar. The marble floor was purposely made to, and did in fact, harmonize with the altar and its surroundings in color and in all other respects. In overruling the protest, the court, after considering the term "altar" in its narrow sense of a "raised structure on which sacrifices are offered or incense burned" and in its broader sense as "a house of worship," concluded that Congress must have used the term "altar" in the "restricted and strictly religious sense." The court, in choosing not to extend the meaning of altars or parts of altars, referring to the harmonious design of the altar and its setting, said:

* * * That accord and that harmony serve to complete the entirety known as a sanctuary, but in accomplishing that result one element of the entirety does not become part of another and none of them loses its identity.

In a second *Daprato* case, *Daprato Statuary Co.* v. *United States*, 26 CCPA 173, C.A.D. 13, decided in 1938 under paragraph 1774, Tariff Act of 1930, this court overruled the importer's protest and held that marble slabs, mosaic panels, panels of Venetian mosaics, and an arch, which when assembled were to form a reredos for an altar, could not be considered as parts of altars. In that case the reredos was separated from the mensa, or altar table, by twenty-six inches at its closest point. The court, quoting from the first *Daprato* case, approved the statement that the term "altar" was used by the Congress in a "restricted and

strictly religious sense" and further agreed that mere harmony of design could not destroy the separate entities, stating:

> * * * Such an arrangement probably makes for convenience, and undoubtedly adds to the beauty of the sanctuary, but surely, because an ecclesiastical architect and the church desire such an arrangement, the reredos does not, for that reason, become an integral, constituent, and component part of the altar in a tariff sense. The most that can be said in favor of the position taken by counsel for appellant is that, in this particular arrangement, the reredos is designed to be used in connection with, but not as an integral part of, the "main altar."

In the subsequent case of *United States* v. *Rambush Decorating Co., General Shipping & Trading Co.*, 48 CCPA 123, C.A.D. 776, a reredos was held not to be part of an altar within the provisions of paragraph 1774 of the Tariff Act of 1930, as amended by the act of June 12, 1952, 66 Stat. 137. The court, after a description of the reredos there in issue and the surroundings in which it was installed, quoted from the opinion of the trial court, as follows:

> From an examination of the record and of illustrative exhibit 1, the reredos at bar appears to be a decorative, wall-like affair, made of marble, in the center of which there is a large mosaic panel depicting a religious scene.
>
> The photograph shows that the complete installation consists of (1) what is known as a predella, or altar steps culminating in a raised platform, (2) what has been termed the "altar proper," (3) the reredos, and (4) a large rectangular canopy, called a baldachino, which is supported high over the already described portions of the assembly by two long columns in the front and in the back by brackets which are attached to the upper part of the reredos. Some parts of the installation were imported, while others were made domestically. The present case involves only the dutiable status of the reredos.
>
> The altar proper is located approximately in the center of predella and consists of a table-like structure resting on four columns or legs and what appears to be a block of light-colored marble in the center, together with a rectangular structure of dark, mottled marble immediately behind the table, and on which candlesticks, a tabernacle, and other altar appurtenances are shown in the photograph.
>
> The reredos rests on the rear of the predella, 30 inches behind the altar proper. Between the altar proper and the reredos, there is a platform with steps going down either way, and, while the purpose of this platform was not explained in the record, it is probable that it is used when the altar furnishings are being serviced or replaced.
>
> Although the record is not very clear on the point, it does not appear that the reredos is attached to or forms any part of the rear wall of the sanctuary or of the cathedral. In other words, it appears to be resting on its own base at the rear part of the predella. Aside from its decorative function, it forms the rear support of the canopy or baldachino.

The appellate court, in the *Rambush* case, *supra*, concluded as follows:

> Obviously an altar and a reredos are two distinct and separate items of church finishings, the one specifically exempt from duty by paragraph 1774, the other not. However, the importer contends that *in this instance* [italics quoted] the reredos is part of the altar because the brackets which support the rear of the

baldachin [apparently synonymous with baldachino] are fastened to the reredos, and because a high altar, or "an altar that blesses sacrament," requires a baldachin. The fallacy of this reasoning is apparent. Certain equipment may be required to conduct various rituals in a church service under canonical law but that fact does not transform the various items into one article. In other words, even though the dogma of the Roman Catholic Church requires a canopy or baldachin over the mensa or altar table during certain ceremonies, this fact does not transform the whole assembly into an altar for tariff purposes. These distinctive items do not become parts of an altar for tariff purposes merely because in this instance they are designed to be dependent upon one another, i.e., the baldachin being supported by brackets which are attached to the reredos. See *Daprato Statuary Co.* v. *United States*, 26 CCPA 173, C.A.D. 13.

In the course of its determination, in the *Rambush* case on appeal, the court called attention to the fact that Congress exempted only certain items of church furniture from import duty and that it is incumbent upon the courts in endeavoring to carry out the will of Congress not to expand the exempted enumeration beyond Congress' clear intent.

As in the *Rambush* case, *supra*, where it was held that an altar and a reredos are two distinct and separate items of church furnishings, the one specifically exempt from duty by paragraph 1774, the other not, it is the opinion of this court that the altar and the bronze screen in issue are likewise distinct and separate items. The possible requirement by canon law or church liturgy that a crucifix is an essential and necessary part of an altar in a Roman Catholic Church for the celebration of Mass can not change what, in fact, is not a part of an altar in a tariff sense into an article entitled to the benefit of free entry in paragraph 1774 of the tariff act, as modified, *supra*, in effect at the time of the importation of the instant merchandise. The imported bronze screen, not being an altar or a part thereof, is not encompassed by the free entry provision of said paragraph 1774, as alleged by plaintiff.

The claim in the protest insofar as it relates to bronze screens is overruled, and insofar as it relates to the Baptistry Gate, having been abandoned, is dismissed.

Judgment will issue accordingly.