GIUSEPPE TOMMASI STUDIOS *v.* UNITED STATES [1]

[1] C. D. 65.

United States Customs Court, First Division

(Decided December 8, 1938)

*Strauss & Hedges* (*Eugene F. Blauvelt* of counsel) for the plaintiff.
*Joseph R. Jackson*, Assistant Attorney General (*Marcus Higginbotham, Jr.,* special attorney), for the defendant.

Before McClelland, Sullivan, and Brown, Judges

McClelland, Presiding Judge: These protests are directed against the action of the collector of customs at the port of New York in assessing duty on certain merchandise at various rates under several paragraphs of the Tariff Act of 1930. The protest claim in each case is that the merchandise is entitled to free entry under paragraph 1774 of the act as parts of altars—

imported in good faith for presentation (without charge) to, and for the use of, [a] corporation or association organized and operated exclusively for religious purposes.

There is no question but that the merchandise in issue was imported in good faith for presentation without charge to and for the use of the Beth Israel Temple in Hartford, Conn., a corporation organized and operated exclusively for religious purposes. The real issue, therefore, is whether the merchandise consisted of parts of altars within the meaning of paragraph 1774, *supra*.

For convenient reference, Illustrative Exhibit B, offered and received during the course of the trial without objection as a photographic representation of the items in issue as set up in the temple after importation, is herewith reproduced. The letters placed thereon represent the following described merchandise on the invoices involved herein:

ILLUSTRATIVE EXHIBIT B.

Entry 809962 (protest 896211–G):

A. One Altar of several marble qualities with Venetian glass mosaic inlays. Also Botticino marble lining.

B and C. Two panels, cornices, and arches of two entrances at sides of the above mentioned Altar, of Algerian Onyx marble, and bases of Black and Gold marble.

D. Marble lining of said entrances, etc.

E. 288 sq. ft. of gold and blue Venetian glass mosaic, mounted on paper.

Entry 354951 (protest 901123–G):

F. Two columns, 11′ 10″ high, of Yellow Siena marble.

Items A were admitted to free entry under the provisions of paragraph 1774, *supra*, by the collector. Items B and C were classified as manufactures of marble and assessed with duty at the rate of 50 per centum ad valorem under paragraph 232 of the Tariff Act of 1930. Items D were classified as polished onyx slabs and assessed with duty at various rates according to thickness under paragraph 232, and Item E was classified as articles composed in chief value of decorated glass and assessed with duty at the rate of 60 per centum ad valorem under paragraph 218. Items F were classified by the collector as manufactures of marble and assessed with duty at the rate of 50 per centum ad valorem under paragraph 232 of the same act.

Giuseppe Tommasi, an ecclesiastical art specialist of fifteen years' experience, who imported and installed the merchandise in issue, testified that in placing it within the temple a foundation was first constructed which is covered by the platform marked H on the photograph and that all of the articles, except the mosaic marked E, rest upon such foundation.

It is apparent from Mr. Tommasi's testimony that none of the imported articles was used as part of the structure of the temple itself. The columns marked F do not actually support the arch above the platform, there being about ¼ of an inch between the tops of the ornamental capitals and the ends of the arch. It appears from the testimony of Rabbi Abraham J. Feldman of the Temple Beth Israel that there were twelve such arches made in the construction of the building, under each of which except that over the platform were placed columns made of a composition. It was felt, however, by the rabbi and the members of the Executive Building Committee that "on the altar nothing that was artificial and not genuine was to be placed," and the columns marked F were therefore made of solid marble.

It is our view, after examining Illustrative Exhibit A, a photograph of the interior of the temple showing some of the other columns, together with the foregoing testimony, that so far as the items marked F are concerned they are more properly to be considered a part of the

architectural scheme of the building rather than of the altar. It is obvious that whatever form the altar might take some sort of column or pillar would be required under the ends of the arch in order to complete the building, independent of the altar.

We therefore hold that they are not parts of altars, and protest 901123–G must therefore be overruled.

The glass mosaic marked E, it was testified, was imported in sections, which were cemented to a wall in back of the altar and not physically connected therewith. Rabbi Feldman testified that the inscription is in Hebrew and is translated as "Know Before Whom Thou Standest," and that it is usually found on arches in permanent synogogues all over the Jewish world. The balance of the design of the mosaic, he testified, represents the concept of revelation in the form of a sunburst. The entire mosaic is illuminated during services.

While it appears to be customary and traditional that an inscription of the type shown on the mosaic in issue be placed upon arches in synagogues, the evidence indicates that it is not required for the proper functioning of a Jewish altar and that it is not in any physical sense a part of or necessary for the completeness of the altar.

The Court of Customs and Patent Appeals in *Hogue* v. *United States*, 13 Ct. Cust. Appls. 587, T. D. 41437, passed upon the question of whether sanctuary lamps, required by Roman Catholic church law to be kept always burning before the altar at a distance from it depending upon the "structure of the building and the local conveniences," were parts of altars within the meaning of that term as used in paragraph 1674 of the Tariff Act of 1922, the predecessor to paragraph 1774 of the Tariff Act of 1930, and, among other things, said:

Since the lamp is not an essential component of an altar, and as the two articles are separate and independent entities, neither dependent upon the other for the performance of its proper, ordinary, and separate functions, the lamp can not be said to be a part of an altar within the meaning of paragraph 1674, *supra*.

Similarly in the case of *Daprato Statuary Co.* v. *United States*, T. D. 49225, wherein a reredos, which is a screen or decorated part of the wall behind an altar, sometimes, though not always, used in Roman Catholic churches, was held not to be part of an altar such as would entitle it to free entry under the provisions of paragraph 1774, *supra*.

We now come to consideration of the marble arches marked B and C on the attached photograph, and the linings, which are marked D. As is shown by the testimony and Illustrative Exhibit B, arches B and C are supported on one side by part A, which is admitted to be an altar, and on the other side by the marble linings or pilasters marked D. Rabbi Feldman explained that the symbol on arch C is a mosaic representing the breastplate of the high priest in the

Temple of Jerusalem, while that on arch B represents the priestly hands of benediction.

The evidence indicates that neither the symbols, the arches, nor the linings or pilasters are required by Jewish ritual law to be included in the design of Jewish altars, and that they are not necessary for the proper functioning of what might be called the altar proper, marked A. However, they are physically attached to the altar proper in the sense that one side of arches B and C rests upon part A and the other side upon part D; all forming one harmonious whole. The architectural relationship between parts A and B, C, and D was explained by Rabbi Feldman as follows:

Usually you will find on altars a blank wall or a wall and a door opening in and out; and there is a sense of finality as you view that. When I began designing this altar I asked the architect whether it would not be possible to devise some way, perhaps by a series of arches, to indicate something beyond, to eliminate this element of finality and finish there. Originally this temple was designed on a larger scale than we actually built it. In the original drawings there were three arches there. Finally we narrowed it down to a single arch on each side. There is no door there. There is a drapery there. Of course, as you look at it there is a suggestion of something beyond. There is not the element of finality at that point.

It is thus apparent that parts A, B, C, and D are not merely separate units designed in harmony with one another, but are essentially one unit, and that without parts B, C, and D the altar would be incomplete in design, although it might still be used as an altar.

For this reason we believe that the case at bar is distinguishable from the case of *Daprato Statuary Co.* v. *United States*, 16 Ct. Cust. Appls. 233, T. D. 42840. There a marble floor was imported to be laid under an altar designed in harmony therewith. In holding that the floor was not part of an altar within the meaning of paragraph 1674 of the Tariff Act of 1922, Judge Smith, speaking for the court, there said:

* * * As was well said by Father Beckmeyer, shrines, altars, sanctuary benches, sanctuary lamps, walls, and flooring must be in harmony and there must be an accord in color, material, and architectural effect in order to make a sanctuary dignified, pleasing to the eye, and worthy of its religious purpose. That accord and that harmony serve to complete the entirety known as a sanctuary, but in accomplishing that result one element of the entirety does not become part of another and none of them loses its identity. Each element, whether it be shrine, altar, bench, or floor, retains its own form, color, material, name, and individuality and must be regarded as a distinct, separate entity.

In *International Statuary Co.* v. *United States*, T. D. 43983, this court passed upon the status for tariff purposes of lamps imported to be attached to a Gothic altar and which had been planned by the architect as part of the architectural scheme of the altar, and in writ-

ing the unanimous opinion of the Third Division Judge Young, among other things, said:

> We think the lamps constitute a part of the altar. They are distinguished from the lamps involved in the case of *Hogue* v. *United States*, 13 Ct. Cust. Appls. 587, T. D. 41437, in that the lamps in that case were suspended from the ceiling at a distance of 20 feet from the altar, whereas the merchandise at bar is attached to and is a part of the architectural scheme of the altar. Being necessary to the architectural scheme, they are a structural part of the altar.

So in the case at bar. To hold, because parts B, C, and D are not essential to the use of part A, that they are not parts of an altar would be to overlook the architectural design of the unit and the thought it was desired to express thereby *as a unit*.

To the extent indicated protest 896211–G is sustained. In all other respects it, and protest 901123–G, are overruled. Judgment will issue accordingly.