(C. D. 1942)

BERNARDINI STUDIOS *v.* UNITED STATES

United States Customs Court, First Division

(Decided December 11, 1957)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* and *Edward N. Glad* of counsel) for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Murray Sklaroff*, trial attorney), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges; OLIVER, C. J., concurring

MOLLISON, Judge: Paragraph 1774 of the free list of the Tariff Act of 1930, as amended by 70 Stat. 1066 (P. L. 1001, Aug. 6, 1956, ch. 989, § 2 (a); T. D. 54169), reads as follows:

PAR. 1774. Altars, pulpits, communion tables, baptismal fonts, shrines, mosaics, or parts of any of the foregoing, and statuary (except casts of plaster of paris, or of compositions of paper or papier-mache), imported in good faith for the use of, either by order of or for presentation (without charge) to, any corporation or association organized and operated exclusively for religious purposes.

The plaintiff herein imported from Italy five articles, which are collectively described on the commercial invoice under the title "Main Altar" and separately enumerated as follows:

1. Table in Violetta and Betticino marble.
2. Retable in green marble.
3. Reredos in Violetta and Betticino marble.
4. Central panel of the reredos consisting of marble and mosaic.
   Central panel of the reredos consisting of statues.

The invoice is in the Italian language, but the foregoing appears to be an acceptable translation.

The "table," described as item 1 above, was admitted to free entry under paragraph 1774, *supra*, but all of the other items were classified by the collector as subject to duty at the rate of 25 per centum ad valorem under the provision in paragraph 232 (d) of the Tariff Act of 1930, as modified by the Presidential proclamation relating to the General Agreement on Tariffs and Trade, T. D. 51802, for manufactures of marble, not specially provided for.

At the trial of the issue, it was conceded by counsel for the defendant that there was no dispute that the articles in question had been imported in good faith for the use of, either by order of or for presentation, without charge, to a corporation or association organized and operated exclusively for religious purposes, and that the sole issue was as to the nature and character of items 2, 3, and 4, i. e., whether they were, in fact, "Altars, * * * shrines, mosaics, or parts of any of the foregoing, and statuary * * *."

It appears that all of the merchandise covered by the invoice description of "Main Altar" and an item known as a "predella," which

arrived in a separate shipment, were ordered and imported for and installed in the Roman Catholic Church of St. Clement in Tarentum, Pa. It is primarily the contention of the plaintiff that all of the imported articles, together with the predella, constituted the parts of a single altar and/or shrine, or, alternatively, that the retable (item 2) is part of an altar or shrine, that the central panel of the reredos which consists of statues (part of item 4) is statuary, such as is provided for in paragraph 1774, *supra*, and that the central panel of the reredos, consisting of marble and mosaic, is mosaics, such as are provided for in said paragraph 1774. Only the predella (imported in another shipment) and the table (which is also known as a "mensa") were allowed free entry.

The first question for consideration, therefore, is whether, collectively, the predella, the table, and items 2, 3, and 4 constituted a single altar or shrine. The plaintiff's position, in this regard, is based upon a contention that those articles constitute a single unit, i. e., an altar or a shrine, in architectural design and expression. The defendant's position is that only those articles which are physically and structurally a part of an altar or shrine are parts of such articles.

It appears that the predella is the step or platform upon which an altar is placed. The mensa or table imported in the involved shipment consists of a slab or marble supported by four columns and a large block of marble in the center. The retable consists of a shelf-like slab of marble supported by blocks resting on the predella, the shelf being in a position somewhat higher than the mensa or table and in back of it. It is clear that, except for the fact that they both rest on the predella, there is no physical or structural connection between the table and the retable. The reredos consists of a three-panelled screen which rests upon and is physically attached to the retable and contains in marble and mosaic a crucifixion group and symbols of the Twelve Apostles. The statuary referred to in connection with the reredos apparently consists of two small statues of angels set on top of columns between the panels of the reredos.

The plaintiff is a firm which designed, imported, and installed the articles in issue and those which were admitted to free entry. The general manager thereof, who supervised the installation of the articles, testified that, collectively, the entire assembly is an altar, the purpose of which is to provide a place at which a Catholic priest may celebrate Mass or conduct other Catholic devotions, and which will inspire a devotional feeling in the congregation.

A photograph of the entire assembly as finally installed in St. Clement's Church was received in evidence as plaintiff's exhibit 1, and examination thereof supports the plaintiff's contention that all of the articles, collectively, are a unit in architectural design and expression.

In a very well-written brief, counsel for the defendant has traced the judicial history of paragraph 1774 and its predecessor provision in the Tariff Act of 1922, paragraph 1674, and concludes therefrom "that unless a structure is *physically and structurally* a part of an altar, it is not a part within the tariff sense of that term." [Italics quoted.]

It is true that, in the past, various imported articles have been held not to be parts of altars because they were not physically or structurally attached to that part of an altar which consists of a tablelike construction. Such rulings, however, did not stem from any concept that the term "parts of," as used in the tariff provisions for parts of altars, had any different meaning when applied to altars than it had when applied to other articles enumerated in the tariff acts.

The idea that a part is an integral, constituent, or component element of an article, as expressed by our appellate court in *United States* v. *Willoughby Camera Stores, Inc.*, 21 C. C. P. A. (Customs) 322, T. D. 46851, has long been accepted as describing the nature of "parts." In a subsequent case, *Steel, Inc.* v. *United States*, 24 C. C. P. A. (Customs) 423, T. D. 48872, our appellate court definitely established that physical or structural attachment or connection to the article was not a *sine qua non* of a "part" in a tariff sense.

That case involved steel grinding balls used in grinding mills which rolled freely inside a cylindrical shell of the machine, without being attached to the same. The court, in holding the balls to be dutiable as parts of machines, stated:

Appellant contends that, as the balls are not attached to the shell, they are not parts of the machine. We know of no rule which requires that an article, in order to constitute a machine, must have all of its parts attached together. * * *

Consequently, the fact that the articles in issue are not physically or structurally attached to the mensa or table of the altar involved, does not, in fact or in law, constitute a bar to their classification as parts of altars. Indeed, it would be strange if an article which would be considered to be a part of an altar if attached to an altar table were to be considered not a part of an altar solely because of the fact that it was not physically or structurally attached thereto.

We may take judicial notice of the fact that altars may take many forms. In some, as in many Christian churches, the principal element is of tablelike construction; in others, there may be no such construction. Note the photograph of illustrative exhibit B, representing a Jewish altar, printed in connection with the decision of this court in *Giuseppe Tommasi Studios* v. *United States*, 1 Cust. Ct. 279, C. D. 65, facing page 280. Again, altars may be relatively simple and plain structures or may be complex and elaborately embellished.

It has been pointed out in past decisions that the question is not what in a canonical or liturgical sense is an altar. Congress pre-

sumably used the term in the common acceptation thereof. Viewed in that light, we think it is a matter of common knowledge that when an ordinary person, whether he be a visitor, communicant, or member of the congregation, enters a church, synagogue, temple, or other edifice of a religious nature where an altar may be found, and views the structure which is generally raised and is the central or focal point for the services conducted in that place, he regards the entire ensemble of what he sees as an altar. The rather technical points of whether the parts of the entity bear individual names, such as predella, table, retable, or reredos, as in this case, are known to comparatively few persons, other than ecclesiastical experts, and certainly are not part of the common knowledge or speech of the average layman.

As an example of this fact, in three of the dictionaries contained in the court's library, there are illustrations in connection with the text of the definition of the noun "altar." In the Century Dictionary and Cyclopedia (1889) and the New Century Dictionary (1946), there is a representation of the high altar of the Cathedral of Notre Dame, Paris, and, in Funk & Wagnalls New Standard Dictionary (1942), there is a representation of the high altar of the Cathedral of Clermont-Ferraud, France. Each of these illustrations shows not only the table and predella, but also the retable and reredos, and demonstrates, we think, what in common speech may be regarded as one form of an altar.

It is true that the illustrations referred to show the altars there depicted in a furnished condition, that is to say, with what may be termed "movables," such as crucifixes, candlesticks, etc. It has long been established that such movable furnishings of an altar are not considered to be "parts of" altars, which are limited to those parts which are fixed or stationary, immovable, and, in that sense, structural. *Frank A. L. Leahy* v. *United States*, 47 Treas. Dec. 760, T. D. 40956.

The photograph which is here in evidence as plaintiff's exhibit 1 shows the items in question as ultimately installed in what is known, according to the record, as the sanctuary of St. Clement's Church. Although the picture is a two-dimensional representation, it shows that the positions of the table and retable, on which the reredos rests, are very close to one another, and that the various components of the present and previous shipments form a single entity in form and design, distinct from the sanctuary in which they are placed. The components are not merely in harmony with one another; they are obviously one concept in design and execution, the whole being what in common speech would be considered as an altar.

For the foregoing reasons, we hold all of the items under protest to be properly classifiable as parts of altars under paragraph 1774, *supra*, and entitled to free entry thereunder. It is, therefore, un-

necessary to pass upon the plaintiff's alternative contentions that the said items are parts of shrines, or that certain of the items qualify for classification under paragraph 1774 as mosaics or statuary.

Judgment will, therefore, issue sustaining the protest claim accordingly.

### CONCURRING OPINION

Oliver, Chief Judge: I concur in the conclusion reached by Judge Mollison, and, as I do, I feel it is necessary to discuss the decisions of our appellate court in *Daprato Statuary Co.* v. *United States*, 16 Ct. Cust. Appls. 233, T. D. 42840, and in *Daprato Statuary Co.* v. *United States*, 26 C. C. P. A. (Customs) 173, C. A. D. 13.

In the earlier case, T. D. 42840, *supra*, which arose under the Tariff Act of 1922 (paragraph 1674), the merchandise under consideration was a "marble, mosaic, inlaid floor, in 16 colors," that had been imported at New York in a knocked-down condition and was subsequently installed as the flooring of the sanctuary in St. Mary's Catholic Church at Dayton, Ohio. The record, in that case, showed that the altar and two shrines rested on the imported floor, and that the floor, in color and in all other respects, harmonized with the altar and its surroundings and was made for that purpose. In denying free entry to the importation as part of an altar or shrine, the Court of Customs Appeals emphasized the distinction between the terms "altar" and "shrine" in their broadest sense and in the meaning to be given them in a tariff sense. In that connection, the appellate court stated as follows:

> In its broad sense the term "altar" means a house of worship, a place devoted to prayer, and in its narrow sense the raised structure on which sacrifices are offered or incense burned as an act of worship. The word "shrine" may signify either a chapel dedicated to some holy personage or a thing, receptacle, case, tomb, or altar made venerable by some historic event or sacred association.

> It is apparent that Congress did not intend to give free entry to churches, chapels, or to buildings set apart for religious uses, and that the terms "altar" and "shrine" were used by Congress *in a restricted and strictly religious sense*. [Italics added.]

The reasoning followed in the cited case by the appellate court, giving effect to the different meanings of the terms "altar" and "shrine," must be viewed in the light of the particular importation, i. e., the flooring of a sanctuary, that was involved therein.

The same viewpoint must be taken with respect to the *Daprato Statuary Co.* case, C. A. D. 13, *supra*, which involved certain parts of a reredos. It is my considered opinion that whether or not a reredos is or is not, in a tariff sense, part of an altar is a question of fact. It would seem that every reredos is not to be considered as a part of an altar. It has been said that "the various parts composing an altar are the mensa or altar table, the predella or steps leading up thereto, the retable upon which the candlesticks are placed, the tabernacle

which sets on the mensa, and the reredos consisting of the entire section in the rear of the mensa, extending from wall to wall" (*Daprato Statuary Co.* v. *United States*, 72 Treas. Dec. 496, T. D. 49225). It is readily conceivable that a reredos which was, in fact, a part of the rear wall of the sanctuary would not be a part of an altar in a tariff sense. In the *Daprato Statuary Co.* case, C. A. D. 13, *supra*, the reredos there under consideration was removed "from the mensa at the closest point by 26 inches by actual measurement," and between the mensa and the reredos there was a platform with three or four steps going down either way therefrom. The appellate court held that such a reredos was not a part of an altar. In the case now before us, the three-panelled reredos is "physically attached" (R. 20) to the retable, which, with the mensa, rests on the predella; the entire combination of articles forming a complete altar "in a restricted and strictly religious sense," *Daprato Statuary Co.* case, T. D. 42840, *supra*.

I agree with Judge Mollison in his line of reasoning and in holding that the items in question are entitled to free entry under paragraph 1774 of the Tariff Act of 1930 as parts of altars.