(C. D. 1360)

Don Bernardo Hammerstein v. United States

## United States Customs Court, First Division

(Decided August 21, 1951)

*Philip Stein (Marjorie M. Shostak* of counsel) for the plaintiff.
*David N. Edelstein,* Assistant Attorney General (*William J. Vitale,* special attorney), for the defendant.

Before OLIVER, COLE, and MOLLISON, Judges; COLE, J., concurring

MOLLISON, Judge: Although this case involves but one importation, there were two classes of merchandise contained therein, and for the sake of clarity they will be treated separately.

The first class of merchandise involved consists of 14 plaques depicting the "Way of the Cross" and known as Stations of the Cross. It is described on the invoice as "14 Stations of the 'Via Crucis'." These were assessed with duty by the collector of customs at the rate of 50 per centum ad valorem under the provision in paragraph 232 (d) of the Tariff Act of 1930 for manufactures of marble, not specially provided for. Although various claims are made in the protest and by timely amendment thereof, the claim relied upon in connection with the said Stations of the Cross is that they are entitled to free entry under the provision in paragraph 1807 of the said tariff act for original sculptures in marble. The complete text of the paragraph is set forth in the margin.[1]

When the protest was called for trial counsel for the parties stipulated that—

\* \* \* the 14 Stations of the Cross covered in this importation are original productions made from a solid block or mass of marble, and are the product of a recognized professional sculptor, Nicoli Arrighini, residing in Pietrasanta, Italy, and that the aforesaid 14 Stations of the Cross were made by hand as the professional production of this sculptor only, and they are not articles of utility or for industrial use, but were presented to and installed in St. Joseph's Catholic Church, Gretna, Louisiana, and that with respect to the said articles the Customs Regulations have been complied with.

Accepting the foregoing stipulation as establishing the facts therein recited, the claim made by amendment of the protest for free entry

---

[1] PAR. 1807. Original paintings in oil, mineral, water, or other colors, pastels, original drawings and sketches in pen, ink, pencil, or water colors, artists' proof etchings unbound, and engravings and woodcuts unbound, original sculptures or statuary, including not more than two replicas or reproductions of the same; but the terms "sculpture" and "statuary" as used in this paragraph shall be understood to include professional productions of sculptors only, whether in round or in relief, in bronze, marble, stone, terra cotta, ivory, wood, or metal, or whether cut, carved, or otherwise wrought by hand from the solid block or mass of marble, stone, or alabaster, or from metal, or cast in bronze or other metal or substance, or from wax or plaster, made as the professional productions of sculptors only; and the words "painting," "drawing," "sketch," "sculpture," and "statuary" as used in this paragraph shall not be understood to include any articles of utility or for industrial use, nor such as are made wholly or in part by stenciling or any other mechanical process; and the words "etchings," "engravings," and "woodcuts" as used in this paragraph shall be understood to include only such as are printed by hand from plates or blocks etched or engraved with hand tools and not such as are printed from plates or blocks etched or engraved by photochemical or other mechanical processes.

under paragraph 1807 of the Tariff Act of 1930 is sustained as to the 14 Stations of the Cross described above, and judgment will issue accordingly.

The remaining merchandise covered by the importation consists of a marble altar and a communion railing which were assessed with duty at the rate of 50 per centum ad valorem under the provision in paragraph 232 (d), *supra*, for manufactures of marble, not specially provided for. It is claimed as to these that they are entitled to free entry under the provision in paragraph 1774 of the Tariff Act of 1930 reading as follows:

PAR. 1774. Altars, pulpits, communion tables, baptismal fonts, shrines, or parts of any of the foregoing, and statuary (except casts of plaster of Paris, or of compositions of paper or papier-mâché), imported in good faith for presentation (without charge) to, and for the use of, any corporation or association organized and operated exclusively for religious purposes.

As we understand the position of the defendant, it is not denied that the articles in question are "Altars * * * communion tables * * * or parts of any of the foregoing" or that they were imported "for the use of * * * [a] corporation or association organized and operated exclusively for religious purposes." It is the defendant's position, however, that the plaintiff failed to establish that the said articles were "imported in good faith for presentation (without charge) to" the said religious corporation.

The facts, as developed in the record, are as follows: The pastor of St. Joseph's Catholic Church, Gretna, La., Rev. Bernard Hammerstein, found that the church needed a new altar and communion rail. During a visit to New York, he learned that such articles could be purchased to advantage in Italy. Upon his return to his parish, he broached the matter to a parishioner, a Mr. John Rau, and it clearly appears that Mr. Rau agreed to pay for the altar and communion rail.

It is the plaintiff's contention that it was Mr. Rau's intention to donate the altar and communion rail to the church and that his actions in connection with the matter were in conformity with that intention.

It is the defendant's contention that Mr. Rau merely donated a sum of money with which the articles in question were to be purchased, but did not donate the articles themselves. In support of this, it is pointed out that Mr. Rau did not personally import the items, and that the duty was paid by the church, and not by Mr. Rau. We think it clearly appears that the items were imported by the plaintiff as agent for Mr. Rau, and it was explained that upon it being discovered that, contrary to expectations, free entry would not be allowed, the church officials decided that Mr. Rau ought not to be called upon to do more than he had originally undertaken.

It is manifest from the record in this case that it was the intention of the donor to donate the articles, but that not having the requisite

technical knowledge to handle the matter personally, he authorized the plaintiff to act for him and on his authority. It was established that the altar and communion railing had to be designed to harmonize with the architectural and decorative effects in the church in which they were to be installed, and that there were elements of design and construction dictated by the liturgy of the church, with all of which a layman, such as the donor, would not necessarily be familiar. Conferences were had between the plaintiff and the donor every week; the donor passed upon the designs; and the plaintiff received the donor's approval before proceeding with each step. Furthermore, it appears that the money was not turned over to the plaintiff to pay for the articles until the work was well advanced, and it appears to us that throughout the entire transaction the donor conducted himself as a person who was seeking to obtain and present certain particular articles, and not merely donating a sum of money without other connection to the transaction.

The case of *United States* v. *Dr. Oidtmann Studios, Inc.* (*Geo. Wm. Rueff, Inc.*), 31 C. C. P. A. (Customs) 116, C. A. D. 260, cited by counsel for the defendant in the brief filed in its behalf, is readily distinguishable on its facts. There, as the court said, the donor was in no way privy to the purchase of the altars and had no knowledge thereof prior to their importation; he merely donated a sum of money with which the church purchased the articles from the importer, a business corporation dealing in such articles. Contrasting that situation with that which obtained here, where the donor was privy to the entire transaction and whose agent, the plaintiff and importer of record, did not act independently of the wishes and desires of the donor, it will be seen that the decision in that case has no applicability here.

We are satisfied that the facts in this case, as revealed by the record, establish that the requirements of the statute, paragraph 1774, and the applicable customs regulations were met, and that the altar and communion rail involved were entitled to free entry thereunder. Judgment will therefore issue sustaining the protest claim accordingly.

CONCURRING OPINION

COLE, Judge: This case was heard and submitted before a single member of this court on circuit under statutory authorization issued by the chief judge to hear or to hear and determine the case (28 U. S. C., 1946 ed., Supp. III, § 254).

My views set forth in *Geo. S. Bush & Co., Inc., et al.* v. *United States*, 22 Cust. Ct. 158, C. D. 1175, questioning the jurisdiction of the division to decide a case similar to these proceedings, continue as the minority expression from the division. Under the practice and pro-

cedure of the court and the rules applicable thereto, much litigation before the court is dependent upon my participation in a decision of the same. Adhering, however, to my views expressed in the *Bush* case, *supra*, but for the purpose of expediting the work of the court I am joining my colleagues in the disposition of this case, and concur in the opinion and judgment attached thereto.