(C. D. 1760)

WESTFELDT BROTHERS v. UNITED STATES

## United States Customs Court, Third Division

(Decided February 9, 1956)

*Ainsworth & Ainsworth*; *Philip Stein* (*Marjorie M. Shostak* of counsel), associate counsel; for the plaintiff.

*Warren E. Burger*, Assistant Attorney General (*Richard M. Kozinn* and *Murray Sklaroff*, trial attorneys), for the defendant.

Before EKWALL and JOHNSON, Judges

JOHNSON, Judge: The merchandise involved in this case consists of a main altar and parts, a communion rail, 2 side altars, 14 stations of the cross, statuary, woodenware, and candelabra, imported from Italy in January and February 1949. It arrived in three shipments and was covered by three separate entries, each in the name of West-feldt Brothers, as importer of record, for the account of Bernardini Studios. According to the declarations of the nominal consignee, Bernardini Studios is the actual owner for customs purposes. The merchandise was entered free of duty under paragraph 1774 of the Tariff Act of 1930, as altars and other articles, imported for presentation (without charge) to, and for the use of, an association organized and operated for religious purposes.

Free entry was denied by the collector and duty was assessed on the marble portions of the shipments at 25 per centum ad valorem under paragraph 232 (d) of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, and on the portions in chief value of wood at 25 per centum ad valorem under paragraph 412 of said tariff act, as modified by the said trade agreement, and the President's proclamation of April 22, 1948, T. D. 51898.

Protest herein was filed on behalf of Westfeldt Brothers, the nominal consignee, wherein it was claimed that the articles were entitled to free entry under paragraph 1774, on the ground that they were imported in good faith for presentation without charge to, and for the use of, the Immaculata Preparatory Seminary at Lafayette, La. At the trial, it was conceded that the candelabra were not of the type of articles entitled to free entry under paragraph 1774.

Paragraph 1774 of the Tariff Act of 1930, as originally enacted, provided as follows:

Altars, pulpits, communion tables, baptismal fonts, shrines, or parts of any of the foregoing, and statuary (except casts of plaster of Paris, or of compositions of paper or papier-mâché), imported in good faith for presentation (without charge) to, and for the use of, any corporation or. association organized and operated exclusively for religious purposes.

The record before us consists of the testimony of Claude E. Blancq, Jr., deputy collector in charge of the liquidating division at New Orleans, the testimony of John A. Vigliero, chancellor of the diocese of Lafayette, La., and certain documents. From this record, the following facts appear:

The merchandise involved herein was imported for installation in the chapel of the Immaculata Seminary, a seminary of the diocese of Lafayette for the education of young men studying for the priesthood. There had been competitive bidding to supply the furnishings for the chapel, and Bernardini Studios made the lowest bid, in the sum of $15,000. Its proposal, dated May 8, 1948 (plaintiff's exhibit 1), was submitted to the bishop of the diocese and was accepted by him. It was stated therein, among other things:

> Since all of the marble work mentioned in this proposal would be manufactured in Italy, we wish to state that no duty is contemplated in the above price.

A notation of acceptance, signed by John A. Vigliero, chancellor of the diocese, appears on the proposal, but a letter from the bishop to Bernardini Studios, dated June 14, 1948 (plaintiff's collective exhibit 3), states:

> I have just sent you the following telegram: "Your proposal for Immaculata Seminary dated May 8th. of the present year is herewith accepted. You may proceed to order altars and communion rail in marble.
>
> Bishop Jeanmard".

According to Monsignor Vigliero, Bernardini Studios was to procure the marble articles from Italy. He said he had tried to do it directly but had been told that it was too complicated and that he should employ someone in this country who was accustomed to that kind of work. He stated that it was the bishop, his superior, who decided which bid for the work was to be accepted and who entered into the contract with Bernardini Studios. The goods were purchased by the diocese acting through its officer, the bishop. Monsignor Vigliero could not have canceled the contract without the consent of the bishop. Final payment was not made until everything was completed to the satisfaction of all concerned, the architect, who had been retained by the bishop, and the bishop.

Some of the funds for the purchase had been collected prior to the acceptance of the bid, but, in view of certain information received in regard to customs duties, the money was returned to the donors, and they were requested to send checks for specific purposes. The bishop then appointed Monsignor Vigliero as agent to collect the money. A donor, in making his gift, wrote a letter to the bishop, stating that he wished to present a particular article, such as a station of the cross, and named Monsignor Vigliero as his agent in all transactions. It was further stated that, in presenting the gift, it was understood that

neither the bishop nor the diocese nor the seminary would be put to any expense in connection therewith. Each gift was accepted by the bishop.

The bishop also appointed Monsignor Vigliero as agent or custodian of special donations to be made by the clergy of the diocese toward the purchase of the main altar. In making their gift, the members of the clergy stated that they desired to present the main altar and the communion rail and that it was understood that neither the bishop nor the diocese would be put to any expense (plaintiff's collective exhibit 5).

Donations of $100 each were requested for the 14 stations of the cross, but additional contributions were accepted and used for the purchase of vestments and other articles, although the donor specifically asked to present a station of the cross.

A statement of Bernardini Studios itemized the cost of the altars and other articles as follows (plaintiff's exhibit 4):

| | |
|---|---:|
| High Marble Altar | $4, 250. 00 |
| Tabernacle | 650. 00 |
| Four smaller Altars @ $1,000 | 4, 000. 00 |
| Two marble statues | 1, 500. 00 |
| Communion Railing with gates | 3, 200. 00 |
| Stations of the Cross | 1, 400. 00 |

Monsignor Vigliero testified that he collected $7,477 from the clergy for the main altar and the communion rail. However, an itemized statement of the contributions made for the main altar totals $7,452 (plaintiff's collective exhibit 2). The witness stated, further, that he received $1,750 each from the bishop and from Monsignor Lerschen, and $2,000 from the estate of Mrs. Gaudin, which was more than the total amount needed. (Apparently, these amounts were for the side altars.) He said that the tabernacle was part of the main altar, but he was under the impression that it had not been imported. However, according to the invoice in consumption entry 04202, the importation included "Gates iron and bronze (2 pieces) and bronze Tabernacle door." There is nothing in the record to show that the tabernacle or the tabernacle door was specifically presented by anyone.

Monsignor Vigliero accumulated the funds for the work and eventually paid them to Bernardini Studios. Some of the donors sent checks directly to Bernardini. Part payment was made when the material was ordered, part when the altar was being built, and final payment was made upon completion of the work. Although the donors had indicated that their gifts were to be at no cost to the diocese, the duty assessed by the collector was paid by the diocese.

The issue before the court is whether these articles were imported in good faith for presentation (without charge) to, and for the use of, a corporation or association organized for religious purposes. The

leading case on this subject is *United States* v. *Dr. Oidtmann Studios, Inc. (Geo. Wm. Rueff, Inc.),* 31 C. C. P. A. (Customs) 116, C. A. D. 260. The articles involved therein were parts of a main altar, and two side altars, which were installed in the St. Louis Cathedral at New Orleans, La. The contracts under which the articles were purchased were made between the appellee and "The Congregation of Saint Louis Roman Catholic Cathedral" and were signed by the archbishop, its president, and by the appellee. The congregation agreed to pay to appellee the prices named in the contract. At the request of the archbishop, the pastor of the St. Vincent de Paul Church in New Orleans agreed to make a donation for the work. He gave a check for the amount requested, which he knew was going to be spent for altars. Subsequently, he signed a paper at the customhouse, stating that he had donated the altars to the cathedral. The purchase price of the articles was paid to appellee by the treasurer of the cathedral with the funds donated for that express purpose. The court held that the articles were not entitled to free entry under paragraph 1774, on the ground that they had not been presented to the cathedral by the pastor or by anyone else. The court said (pp. 122–123):

Father Anderson made a donation to the St. Louis Cathedral of money, not altars, and with such money the St. Louis Cathedral purchased the altars. They were never presented to the St. Louis Cathedral without charge, but were paid for by the St. Louis Cathedral. Father Anderson never had either title to, possession of, or dominion over the imported articles and hence he could not have made a presentation of them to the St. Louis Cathedral without charge.

\*      \*      \*      \*      \*      \*      \*

\* \* \* The articles were furnished to the St. Louis Cathedral by appellee pursuant to contracts under which the St. Louis Cathedral agreed to pay and did pay to appellee the price agreed upon. The mere fact that the St. Louis Cathedral paid for them out of a special fund did not change the transaction from a sale to the St. Louis Cathedral to a presentation to it of the imported articles without charge.

\* \* \* Congress in clear and unambiguous language provided in paragraph 1774 that to come within its provisions the articles therein named must have been imported "in good faith for presentation (without charge)" to a religious organization. This language clearly requires that a donor must at the time of importation have such relationship to the imported articles, either directly or by his agent, that he could exercise control over the articles, for without such control they could not be presented by him without charge to a religious organization.

Another case on this subject, *Don Bernardo Hammerstein* v. *United States,* 27 Cust. Ct. 147, C. D. 1360, involved the following facts: The pastor of St. Joseph's Catholic Church, Gretna, La., found that the church needed a new altar and communion rail, and, upon request, one of his parishioners agreed to pay for the same. Not having the requisite technical knowledge to handle the matter, he asked the pastor to act for him and on his authority. Conferences were had

between the donor and the pastor; the donor passed upon the designs; the pastor received his approval before proceeding with each step; the money was not turned over to the pastor until the work was well advanced. The court found that the donor was privy to the entire transaction and that his agent, the pastor, did not act independently of his wishes. It was, therefore, held that the articles were entitled to free entry under paragraph 1774.

In the instant case, while it appears that each of the donors stated that he was presenting a certain specific article and that he was appointing the chancellor as his agent in the transaction, all that he actually did was to donate the money. The contract was made by the bishop and could not have been canceled without his consent. Payment was made upon completion of the work to his satisfaction and that of the architect whom he retained. While the chancellor was appointed agent for the donors, it is evident that his only authority was to collect the funds and use them to pay for the work. He had no power to order the articles, select them, pass upon their design, or reject them. Neither the donors nor the chancellor, as their agent, had title to, possession of, or dominion over the imported articles. Therefore, they could not have made a presentation of them to the seminary. In fact, some of the funds contributed were used for purposes other than those specified. The articles were imported by Bernardini Studios, in accordance with its contract with the bishop. The correspondence in the record is between Bernardini Studios and the bishop, not the chancellor, as agent of the donors. The chancellor was not regarded as the purchaser.

Under these facts and circumstances, which are very similar to those involved in the *Oidtmann* case, *supra*, the imported articles do not fall within the exemption granted by paragraph 1774 of the Tariff Act of 1930.

Subsequent to the date of importation herein, said paragraph 1774 was amended by Public Law 392 (66 Stat. 137), to permit free entry to—

Altars, pulpits, communion tables, baptismal fonts, shrines, or parts of any of the foregoing, and statuary (except casts of plaster of paris, or of compositions of paper or papier-mâché) imported in good faith for the use of, either by order of or for presentation (without charge) to, any corporation or association organized and operated exclusively for religious purposes.

Plaintiff contends that this amendment should be taken into consideration by the court in this case on the ground that it indicates that the judicial construction of the original statute has not received legislative ratification and that it was the intention of Congress, under the statute as well as the amendment, to grant a more liberal exemption from duty than had been allowed by the court.

In a report made by the Senate Committee on Finance in connection with the amendment (Senate Report No. 1601 of May 28, 1952, 1952 United States Code Congressional and Administrative News 1516), it is stated:

Under existing law, altars, pulpits, communion tables, baptismal fonts, shrines, or parts of any of the foregoing, and statuary * * * are admitted free of duty when imported in good faith for presentation (without charge) to, and for the use of, any corporation or association organized and operated exclusively for religious purposes. If, however, a religious corporation or association uses its own funds or receives a monetary gift to be used by it for the acquisition of the articles listed above, the applicable rate of duty is imposed. The bill would eliminate this incongruity by permitting the free entry of such articles when imported in good faith for the use of, either by order of or for presentation (without charge) to, any corporation or association organized and operated exclusively for religious purposes.

It is evident that Congress intended to extend the exemption previously granted, but there is nothing to show that the provision was to be retroactive. Statutes are presumed to be directed to the future and to operate prospectively, unless there is a clear expression to the contrary. *Brown & Co.* v. *United States*, 12 Ct. Cust. Appls. 93, T. D. 40026; *Porto Rico Brokerage Co., Inc.* v. *United States*, 22 C. C. P. A. (Customs) 236, 240, T. D. 47156; *Hassett* v. *Welch*, 303 U. S. 303, 314, and cases cited. The principle applicable here is that where a subsequently enacted statute includes language which did not appear in an earlier act, it is a legislative admission that the language of the earlier statute was not broad enough to include the matter added. *United States* v. *Wells, Fargo & Co.*, 1 Ct. Cust. Appls. 158, T. D. 31211; *Nat E. Berzen, Inc.* v. *United States*, 23 Cust. Ct. 24, C. D. 1183.

For the reasons stated, we hold that the within merchandise is not entitled to exemption from duty under paragraph 1774 of the Tariff Act of 1930 but is properly dutiable, as assessed by the collector. The protest is overruled and judgment will be rendered for the defendant.