No. 69373.—Castelazo & Associates et al. v. United States, protests 61/16334, etc. (Los Angeles).

NICHOLS, Judge: The merchandise involved in these protests, consolidated at the trial, consists of marble pieces, imported from Italy and entered at the port of Los Angeles between July 27, 1959, and September 9, 1959, inclusive. They were assessed with duty at 21 per centum ad valorem under paragraph 232(d) of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108, as marble, wholly or partly manufactured into articles, not specially provided for. It is claimed that they are entitled to free entry under paragraph 1774 of said tariff act, as amended by 66 Stat. 137, and 70 Stat. 1066, as parts of altars or shrines.

The pertinent provisions of the tariff act are as follows:

Paragraph 232(d), as modified:

Marble, breccia, and onyx, wholly or partly manufactured into monuments, benches, vases, and other articles, and articles of which these substances or any of them is the component material of chief value, not specially provided for.       21% ad val.

Paragraph 1774, as amended:

Altars, pulpits, communion tables, baptismal fonts, shrines, mosaics, or parts of any of the foregoing, and statuary (except casts of plaster of paris, or of compositions of paper or papier-mache), imported in good faith for the use of, either by order of or for presentation (without charge) to, any corporation or association organized and operated exclusively for religious purposes. [Free.]

It was stipulated at the trial that the items involved herein were imported in good faith for the use of, either by order of, or for presentation without charge to, a church or association organized and operated exclusively for religious purposes.

Counsel for the plaintiffs stated that the claim in protest 61/16334 was limited to the merchandise described on the commercial invoice as caps, canopy, and pedestals, and that, in protest 61/16335(B), to the merchandise described on the commercial invoice as travertine and on the consular invoice as eight cases of baldachino in marble, and that it was claimed that the baldachino was entitled to free entry under paragraph 1774, *supra*, as parts of altars. Protest 61/6414 was limited to the merchandise described on the commercial invoice as reredos and so described thereon in red ink by the examiner. Said merchandise was claimed to be entitled to free entry under paragraph 1774, *supra*, as parts of shrines.

Since the evidence shows that the merchandise to which the protests are confined consists of marble parts for (a) a baldachino, and (b) a reredos for a shrine, it will be convenient to take them up separately and in that order.

a) The baldachino. The claim in litigation is that the baldachino is a part of an altar. No claim is made that the article is specified elsewhere in paragraph 1774. The evidence shows that a baldachino, otherwise known as a ciborium or cibory is, in Roman Catholic churches, a canopy usually of marble which is erected over the altar where the Mass is performed. When the early Christians first emerged from the catacombs, they did not have churches and performed religious ceremonies in the open air. Use of a canopy, at first of a portable type, became customary to protect the altar from the sun and rain; its association with the altar is, therefore, a matter of ancient tradition. The court in this case had the benefit of testimony of Father Louis C. Rudolph, a Jesuit priest, who has special familiarity and experience with respect to ritual and ecclesiastical design. His testimony shows that it is a matter of obligation to perform the Mass only on an altar which is properly covered by a ciborium or baldachino. He said "According to the laws of the Church, a liturgically erected altar should consist of a consecrated stone on a predella, and surmounted by what they call a ciborium, or in English a cibory, or a baldachino, also." The baldachino is necessary "according to obligation" for the completeness of the altar. However, in his testimony, the Father refers to the altar in words which plainly denote that it does not include the baldachino. The altar is under the baldachino and the baldachino is over the altar, but semantically they are distinct. Thus, he agreed with, and approved of, a definition of a baldachino as being "a canopylike structure generally erected *over* an altar." "* * * it's under obligation to have a ciborium *above* the altar." [Emphasis supplied.]

Certainly, the most usual way of speaking of an altar implies that only the consecrated table, or mensa, is the altar. One is reminded of the statement of Thomas Jefferson, which is engraved on his memorial in Washington, D.C., "I have sworn upon the altar of God eternal hostility against every form of tyranny over the mind of man." Note, he said "upon the altar" not in the altar or under the altar. Plaintiffs' contention would make the latter two prepositions appropriate, but in fact, they sound grotesque.

In view of the foregoing, plaintiffs' protest claim respecting the baldachino cannot be sustained. Our appellate court has several times held that the term "altar" in paragraph 1774, *supra*, includes only the altar as known in common speech and not articles, not part of the altar in the ordinary meaning of the term, which may be part of the setting of the altar and whose presence may be necessary for permissible use of an altar in performance of ritual. *United States* v. *Rambush Decorating Co. et al.*, 48 CCPA 123, C.A.D. 776; *United States* v. *Buck's, Inc.*, 47 CCPA 12, C.A.D. 721, and cases cited therein; *Daprato Statuary Co.* v. *United States*, 26 CCPA 173, C.A.D. 13. The emphasis of the two more recent cases is enhanced by the fact that they are reversals of decisions by this court. The legal principle which they establish would seem to be too clear to necessitate any more detailed analysis of the facts pertaining to the decisions, or quotation from them. The second division of this court, per Lawrence, J., has again gone over the ground and quoted from the decisions at length in *Maher & Company* v. *United States*, 54 Cust. Ct. 101, C.D. 2515, decided February 23, 1965, to which reference is made.

b) The reredos. This is claimed to be free of duty under paragraph 1774, *supra*, as parts of a "shrine." There were two side shrines in the church, one dedicated to St. Joseph, and the other to the Blessed Mother. A photograph of the shrine dedicated to the Blessed Mother is in evidence as exhibit 2. A shrine is a place dedicated out of special devotion to some special individual, either Jesus Christ Himself, or His Blessed Mother, His Queen, or some saint who has been canonized by the Church, according to the testimony of Father Rudolph. This shrine contains a statue of the Virgin with her foot crushing a snake. There is a background of mosaic which, in turn, is encircled by the reredos. There is a marble altar below and in front of the shrine. The reredos culminates at the top with a crown which denotes that the Virgin is the Queen of Heaven. It would not be appropriate in a shrine dedicated to anyone else. Therefore, the reredos would appear to be part of an architectural setting appropriate to the Virgin alone.

Our appellate court has held, in *United States* v. *Greek Orthodox Church of Evangelismos*, 49 CCPA 35, C.A.D. 792, that an iconostasis is free of duty as a shrine. This article is an elaborately adorned structure made of wood, extending clear across the church, and including three doors through which priests pass in approaching and receding from the altar in the liturgy. On the upper panel of each door, and in each of four similar panels there were to be erected in the iconostasis, after importation, icons or holy pictures   Such icons are placed before the congregation as visible aids for worship, and it is one of the functions of the iconostasis to hold and display them. They are regarded as sacred and are honored with a relative worship.

The court refers to the *Rambush* case, *supra*, quoting with approval the statement "Although it has been urged that when ecclesiastical words are involved, canonical law should be controlling, nothing has been brought to our attention which convinces us that we should ascertain the congressional meaning of such words differently than when confronted with purely secular words." The court goes on to hold that the common and tariff meaning of the word "shrine" has been enlarged in scope and meaning, so as to embrace a receptacle containing an object of religious veneration. The opinion goes on to cite, with approval, the decision of this court in *The Gasparri Studios* v. *United States*, 33 Cust. Ct. 470, Abstract 58614, in which it was held that a marble frame or mounting intended as an elaborately ornamented frame for a picture of the Madonna and Child, together with a bronze grille were, collectively, a shrine. Other decisions of this court are likewise cited with approval.

In view of the foregoing, it would seem to be settled that the shrine of the Virgin here involved includes the background setting, and specifically, the reredos, as a matter of common speech.

It might be urged that there is a dissonance and lack of symmetry in holding free under paragraph 1774, *supra*, the background of a shrine whose importance is secondary in the layout of the church, while the architectural setting of the altar, the focal point of attention, is held dutiable, even as to such part of the setting as is the indispensable supplement to the altar, according to the liturgy of the church. Our decision only makes the asymmetry more striking by bringing two lines of decision together in a single opinion. Both lines are binding on us in the situations where they apply. The juxaposition may be repugnant to a lawyer brought up in the common law tradition which seeks to interpret the raw materials of decision in such a manner as to announce rules which are systematic, harmonious, and rational. This system-building impulse can be carried too far in any field of law and, in the field of tariff interpretation, more than most, it must be laid aside in formulating any decision at a very early stage. In customs law, a judicial impulse to systematize, rationalize, and harmonize could produce untold havoc. In the situation before us, the Congress has intervened, having amended paragraph 1774, *supra*, in 1962 (76 Stat. 403), too late to have any legal impact on the entries at bar. It is to be hoped that interpretations of paragraph 1774, *supra*, made in light of the amendment, may be systematic, rational, and harmonious.

For the reasons stated, protest 61/6414 is sustained. It is assumed that the merchandise covered thereby includes the reredos which is a part of the shrine of the Blessed Virgin and the one that is a part of the shrine of St. Joseph. The parties seem to have assumed that evidence applicable to the shrine of the Virgin would control the other shrine also. We do not disturb that assumption. Said merchandise is held entitled to free entry under paragraph 1774, *supra*, as parts of shrines. Protests 61/16334 and 61/16335(B) are overruled. Judgment will be rendered accordingly.