## JOHN HORVATH COMPANY
v.
## UNITED STATES.
C.D. 3174; Protest Nos. 63/6039–7777, 63/6040–7778.

United States Customs Court, First Division.
Oct. 26, 1967.

---

6. 18 U.S.C. § 5006(g).

John C. Ray, Detroit, Mich., for plaintiff.

Edwin L. Weisl, Jr., Asst. Atty. Gen. (Charles P. Deem, New York City, trial atty.), for defendant.

Before WATSON and BECKWORTH, Judges.

BECKWORTH, Judge:

The merchandise involved in these cases consolidated at the trial consists of 15 marble plaques depicting the Mysteries of the Rosary and pieces of marble grille work consisting of a cruet stand and a manipulation stand, all imported for use in the Our Lady of Heaven Church in Detroit, Michigan. The merchandise was imported from Italy and entered at the port of Detroit in August and October of 1958. It was assessed with duty at 21 per centum ad valorem under paragraph 232(d) of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas.Dec. 150, T.D. 54108, as articles in chief value of marble not specially provided for. It is claimed that the plaques are entitled to free entry under paragraph 1774 of said tariff act, as amended by 66 Stat. 137 and 70 Stat. 1066, as shrines, and that the pieces of grille work are entitled to free entry under said paragraph, as amended, as parts of altars.

Pertinent provisions of the tariff act are as follows:

Par. 232(d), as modified:

Marble, breccia, and onyx, wholly or partly manufactured into monuments, benches, vases, and other articles, and articles of which these substances or any of them is the component material of chief value, not specially provided for * * * 21% ad val.

Par. 1774, as amended:

Altars * * * shrines * * * or parts of any of the foregoing * * * imported in good faith for the use of, either by order of or for pre-

sentation (without charge) to, any corporation or association organized and operated exclusively for religious purposes. [Free.]

The sole witness called at the trial was John Horvath, the importer of record, who testified as follows:

He was born in Czechoslovakia, finished his college studies and was employed there after the war for a couple of years. He subsequently spent 2½ to 3 years in Italy studying liturgical art, particularly church interiors and appointments, such as altars, Stations of the Cross, reredos, and statuary. He came to the United States in 1951 and has since been engaged in designing and importing articles of marble, wood, mosaic, and stained glass for churches and erecting them.

The witness testified that each of the plaques is a marble carving or relief measuring 16 by 12 inches, depicting one of the 15 Mysteries of the Rosary. Those depicting the five Joyful Mysteries are attached to a column on the left side of the altar, those showing the five Glorious Mysteries on the right, and those illustrating the five Sorrowful Mysteries on the triangle above the baldachino. The two columns support the baldachino and are attached to the predella of the main altar. The Sorrowful Mysteries are not in the usual order so that the crucifix may be on the top. They are also duplications or reproductions of five of the Stations of the Cross. The official papers which were received in evidence include two photographs depicting the main altar of the church and show the columns and triangle with the Rosaries. Two booklets, containing illustrations of the Mysteries together with prayers and instructions, were received in evidence as exhibits 1 and 2.

The witness said he was familiar with the part the mysteries play in the devotional scheme of the church and stated:

The Mysteries of the Rosary is practically a rosary itself. It's a

prayer, it's a novena to the Mysteries of the Rosary.

Q. Are there special prayers that are said to it?—A. Yes, there are special prayers, yes, sir.

The witness also testified as to the plaques:

In my opinion they are shrines, they are shrines of the visitation of the Cross because they are devotional shrines. You might call them devotional emblems, devotional symbols. But still they express the 15 Mysteries of the Rosary, the devotion to the Virgin Mary. The rosaries would go to the Virgin Mary.

According to the witness, such devotional emblems or symbols are found in other churches in the United States on walls or in stained glass windows. He said that they are sometimes in a chapel, perhaps on the back wall, and explained that there was nothing in canon law which says that they must be put up in one or another place.

The witness identified the grille work covered by protest 63/6040 on the photograph attached to the official papers as the two stands on either side of the altar. He said that the one on the righthand side is called a cruet stand and the one on the lefthand side a manipulation stand. The cruet serves as a stand for holding the wine and water used at the Mass, and the manipulation stand for holding vestments which the priest changes at the time of high or solemn Mass or Vespers. The stands are attached to the predella and the columns but not to the altar.

Mr. Horvath testified that he was a Catholic and attended his own church. However, the only service he attended at the Our Lady Queen of Heaven Church was the dedication, and he did not really know what services were performed there.

The witness testified that the columns were designed as a part of the altar explaining that they were a necessary

part of the altar in a Catholic church and that the baldachino, above the altar, was also a necessary part. The baldachino could be attached to the wall or set on columns. The columns here were not attached to the altar proper, which is a table called the mensa. There is a space between the mensa and the columns. The witness also explained that the cruet or credence table could be separate or could be attached to the altar, and that both the cruet table and the manipulation table are places to store various things used during, before, or after the service.

■ The question of whether particular importations constitute parts of altars or shrines has been before the courts on many occasions. Although a liberal construction of the statute has been adopted in some cases of doubt, it has also been pointed out that Congress, exempted only certain items of church furniture from import duty, and the courts may not expand the list beyond the clear intent of Congress. Benziger v. United States, 192 U.S. 38, 24 S.Ct. 189, 48 L.Ed. 331; United States v. Greek Orthodox Church of Evangelismos, 49 CCPA 35, C.A.D. 792; United States v. Buck's, Inc., 47 CCPA 12, C.A.D. 721; United States v. Rambush Decorating Co. et al., 48 CCPA 123, C.A.D. 776; Maher & Company v. United States, 54 Cust.Ct. 101, C.D. 2515; Castelazo & Associates et al. v. United States, 54 Cust.Ct. 460, Abstract 69373.

It has been held that the term "altar" in paragraph 1774, supra, includes only the altar, *per se*, and not articles not physically attached to it or which constitute a setting for the altar and whose presence may be necessary for use of the altar in the performance of a ritual. Such articles as sanctuary lamps, mosaic inlaid floors, a wall facade or reredos covering the rear wall of an arched chamber in the sanctuary, and a reredos which formed the rear support of the canopy or baldachino, have been held not to be parts of altars. Hogue v. United States, 13 Ct.Cust.Appls. 587,

T.D. 41437; Daprato Statuary Co. v. United States, 16 Ct.Cust.Appls. 233, T.D. 42840; Daprato Statuary Co. v. United States, 26 CCPA 173, C.A.D. 13; Rambush Decorating Co. et al., supra.

In the *Hogue* case, the court stated (pp. 588–589):

It clearly appears from the record that the imported lamp is in no sense physically a part of the altar. It is not a piece, fraction, segment, or section of an altar; nor is it in any physical sense necessary to the completeness of such article. It does not in any way aid or contribute to the proper function of an altar, except that, according to the canons of the Roman Catholic church, both must be present in the sanctuary. Moreover, when the lamp in question is in use, it hangs suspended from the ceiling of the sanctuary, a distance of 20 feet from the altar; and the distance such lamps may be placed from the altars depends only upon the "structure of the building and the local conveniences."

Since the lamp is not an essential component of an altar, and as the two articles are separate and independent entities, neither dependent upon the other for the performance of its proper, ordinary, and separate functions, the lamp can not be said to be a part of an altar within the meaning of paragraph 1674 [1774], supra. * * *

In the *Rambush* case, the court stated (pp. 125–126):

Obviously an altar and a reredos are two distinct and separate items of church furnishings, the one specifically exempt from duty by paragraph 1774, the other not. However, the importer contends that *in this instance* the reredos is part of the altar because the brackets which support the rear of the baldachin are fastened to the reredos, and because a high altar, or "an altar that blesses sacrament," requires a baldachin. The fallacy of this reasoning is apparent.

Certain equipment may be required to conduct various rituals in a church service under canonical law but that fact does not transform the various items into one article. In other words, even though the dogma of the Roman Catholic Church requires a canopy or baldachin over the mensa or altar table during certain ceremonies, this fact does not transform the whole assembly into an altar for tariff purposes. These distinctive items do not become parts of an altar for tariff purposes merely because in this instance they are designed to be dependent upon one another, i.e., the baldachin being supported by brackets which are attached to the reredos. See Daprato Statuary Co. v. United States, 26 CC PA 173, C.A.D. 13. [Emphasis quoted].

From these cases it appears that the courts have construed the term "altar" to mean the raised structure or table upon which sacrifices or offerings are made as an act of worship. They have not considered as parts any items which are not physically attached to the altar proper or which are appurtenances with independent names or functions. In view of these authorities, it is evident that the cruet and manipulation stands involved here cannot be held to be parts of altars. They are not physically attached to the altar; they are not in any physical sense necessary to the completeness of the altar; they are not a part of the raised structure on which sacrifices are offered as an act of worship; they are independent entities having separate functions from the altar. Therefore, they are not entitled to free entry under paragraph 1774, supra, as parts of altars.

We must next determine whether the 15 plaques depicting the Mysteries of the Rosary are shrines as that term is used in paragraph 1774, supra.

In the first Daprato Statuary Co. case, supra, the court pointed out that in a predecessor paragraph, Congress had for its legislative purpose "the granting of free entry to the altars or raised structures in churches upon which sacrifices or offerings are made as an act of worship and to that particular kind of altar or structure suggesting an altar which is dedicated to some holy personage or sacred entity and is called a shrine."

In C. Wildermann Co. v. United States, 56 Treas.Dec. 572, T.D. 43713, it was held that Stations of the Cross were shrines. In the course of the opinion the court stated (p. 574):

* * * It appears that although a shrine was originally a tomb containing the bones of saints or other sacred person, the meaning of the word has, through the ages, been recognized by lexicographers to have enlarged in scope so as to embrace a receptacle containing an object of religious veneration, such as a niche for sacred images. It is clear, therefore, that pieces of statuary, having carved therein scenes representing Christ on the way to the Cross, and having as their purpose the creation of religious veneration in man, are shrines. * * *

In a more recent case, The Gasparri Studios v. United States, 33 Cust.Ct. 470, Abstract 58614, it was held that the setting surrounding a picture of the Madonna and Child was part of the shrine. The court noted that the entire work was installed beyond and higher than the main altar and was a focal point for special devotions which were conducted regularly. It held that the painting and the surroundings were intended, designed, and used as a shrine.

In United States v. Greek Orthodox Church of Evangelismos, supra, it was held that an iconostasis, a screen or partition located in the sanctuary of a Greek Orthodox Church, one of whose functions was to hold and display icons, was entitled to free entry as a shrine. It appeared that, in accordance with the liturgy of the Greek Orthodox Church, the icons were placed before the congregation during services as visible aids for

worship and that when no service was taking place, members of the congregation often prayed before an icon.

In Castelazo & Associates et al. v. United States, supra, it was held that a so-called reredos was part of a shrine. In that case there were two shrines in the church, one dedicated to St. Joseph and the other to the Blessed Mother. The latter contained a statue of the Virgin, a background of mosaic which, in turn, was encircled by ornamented pieces of marble around the mosaic background, culminating at the top with a crown. There was a marble altar below and in front of the shrine. The court held that the shrine of the Virgin involved included the background setting and that the reredos was part of a shrine.

In Lea's v. United States, 41 Cust.Ct. 4, C.D. 2012, the merchandise consisted of 12 majolica tiles that the witness said were liturgical symbols representing the Apostles and depicting an abstract presentation of "The Last Supper"; that they were set in a wall behind the altar of the church and were not used as part of any religious ceremony. The court held that they were not entitled to free entry as parts of a shrine within the meaning of paragraph 1774.

In Westfeldt Brothers v. United States, 48 Cust.Ct. 125, C.D. 2323, it was held that 11 stained glass windows installed in different parts of the church were not shrines. The court discussed a number of cases involving shrines and stated (p. 129):

It will be observed that, in all of the cited cases, the court, sustaining the claimed classification for shrines or parts of shrines, found the merchandise to consist of a religious article or a religious unit, particularly located in a church, for worshipers to pay special reverence, or to incite devotion upon the part of worshipers, through special services that were conducted before the shrine.

The stained glass windows involved herein do not meet such standards. While they are not, as the record discloses, the windows of the building, which is protected from the elements of the weather by plate glass windows, these stained glass windows are the windows of the church, and, as such they are, by design and construction, conducive toward promoting a spirit of prayer and meditation for parishioners or worshipers. The specific locations of the windows in question serve to emphasize that they do not meet the requirements for classification as shrines, under the line of cases heretofore outlined.

The court discussed the case of Columbo Co. v. United States, 71 Treas.Dec. 186, T.D. 48794, which involved a mosaic depicting a scene described as "Christ Among the Children", and which was imbedded in the walls of the baptistry of a church. In that case, it was held that there was no evidence that the mosaic incited veneration and devotion on the part of worshipers or that it accomplished any other purpose than that of a decoration for the baptistry.

■ The plaques, in the instant case, of themselves might perhaps be comparable to the niche with sacred images or carved pieces of statuary referred to in the *Wildermann* case, supra, if they were used as shrines or as separate places of worship. However, they were attached to the columns and triangle which form a setting for the main altar of the church, and there is no evidence that special services were ever conducted before them or that they were special objects of veneration. Their specific location militates against this. Their purpose was evidently to incite veneration and devotion during services conducted before the main altar and not separately, as in the case of Stations of the Cross or other shrines. On the authority of the cases cited, we hold that the plaques involved here are not entitled to free entry as shrines under paragraph 1774, supra.

We note that paragraph 1774 was amended in 1962 (76 Stat. 403) to cover:

Altars, pulpits, communion tables, baptismal fonts, shrines, mosaics,

iconostases, or parts, appurtenances, or adjuncts of any of the foregoing, whether to be physically joined thereto or not, * * *.

In the Senate Report on the bill it is stated (U.S. *Code Congressional and Administrative News*, 87th Cong., 2d sess., vol. 1, pp. 2187–2188):

A second purpose of the bill is to provide that articles which are appurtenances or adjuncts of the named articles, as well as parts thereof, shall be accorded the free entry privilege whether to be joined thereto or not, when imported under the conditions specified. Thus, articles concerning which interpretative questions have arisen, such as baldachinos, reredoses, tabernacles, altar predellas, altar cloths, and altar candlesticks, which are not actually physically attached to, or are structural parts of altars, pulpits, communion tables, and other religious articles named in paragraph 1774, would be within the purview of the bill. Candles and similar items not specially prepared for use with altars, shrines, etc., and which find other uses, would not be included.

By the terms of the enacting statute, this amendment is effective only with respect to articles entered, or withdrawn from warehouse for consumption on or after the 30th day after enactment (August 24, 1962). Therefore, it is inapplicable to the instant merchandise. It is in fact an indication that the former language was not broad enough to include the articles involved herein. United States v. Wells, Fargo & Co., 1 Ct. Cust.Appls. 158, T.D. 31211.

For the reasons stated, the protests herein must be overruled as to both the 15 plaques and the cruet and manipulation stands.

Judgment will be entered accordingly.