(C.D. 4019)

MARUBENI-IIDA (AMERICA), INC. *v.* UNITED STATES

## United States Customs Court, First Division

(Decided May 12, 1970)

*Barnes, Richardson & Colburn* (*Earl R. Lidstrom* of counsel) for the plaintiff.
*William D. Ruckelshaus*, Assistant Attorney General (*Robert Blanc*, trial attorney), for the defendant.

### Before WATSON, MALETZ, and RE, Judges

MALETZ, Judge: These two consolidated protests concern the proper tariff rate to be assessed on electric guitars that were imported from Japan via Chicago at various times in the period from March to November 1965. One group of importations consisted of solid-body electric guitars, the other of hollow-body electric guitars. Both types were classified by the government under item 725.06 of the Tariff Schedules of the United States as "Other stringed [musical] instruments," and duty was assessed at 34 percent ad valorem.

Plaintiff claims that both types are properly classifiable under item 725.45 as "Electronic musical instruments," dutiable at 17 percent ad valorem. We sustain the protests.

Quoted below are the pertinent statutory provisions which are contained in subpart A, part 3, schedule 7 of the tariff schedules:

Classified under:

Subpart A headnotes:

\* \* \* \* \* \* \*

2. For the purposes of this subpart—

\* \* \* \* \* \* \*

(c) the term "*electronic musical instruments*" embraces all musical instruments in which the sound is generated electrically, and conventional-type instruments not suitable for playing without electrical amplification, but the term does not include conventional-type instruments, fitted with electrical pick-up and amplifying devices, when the instrument is suitable for playing without such amplification.

3. The provisions of this subpart for string, wind, and percussion musical instruments include such instruments whether or not fitted with electrical pick-up and amplifying devices. Such devices, however, are separately classifiable from the musical instrument with which im-

ported unless such devices are, or are designed and intended to be, fitted into or housed in the instrument itself.

Stringed musical instruments:

| | | | | | | |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

725.06        Other stringed instruments_____        34% ad val.

Claimed under:

725.45        Electronic musical instruments_____        17% ad val.

The facts are as follows: The imported electric guitars—both solid and hollow body—were sold separately from the amplifying system.[1] Sound in such guitars is produced electronically by the vibration of steel strings, which vibration is picked up by so-called "pickups" and circulated through the electronic system. The top of the body of the electric guitars—which in the case of the hollow-body guitar is made of plywood—plays no part in producing sound since it does not and is not designed to vibrate; in fact, the electronics in the instruments could just as well be placed on a board to produce the desired sound. Further, the imported electric guitars are not meant to be played without amplification; they are designed to operate through the electronics system.

Acoustical guitars, by contrast, are designed to be played without amplification. In such guitars the sound is produced by vibrating the body—which is usually of spruce. As the strings on such guitars are picked, the vibration travels through the bridge and activates the top of the body which is the part of the instrument to which the bridge is attached.

Instructive is the testimony of the two expert witnesses at the trial. The first such witness—who was called by plaintiff—is a professional guitarist, a professor of guitar at a university, and the operator of a music school. The thrust of his testimony was that the tonal quality of the imported hollow-body electric guitar, without amplification, is "very, very poor," and that for that reason it is suitable, when played in that fashion, only for practice. To like effect is the testimony of the government's expert witness—who is also a professional guitarist. He testified that the hollow-body guitar, when played without amplification, is suitable only for practice; that he himself has played that type of guitar only for practice and at small parties in friends' homes; that because of its poor tonal quality he would not use it without amplification in playing professionally with a band or in giving a solo performance; that that type of instrument is designed as an

---

[1] The testimony indicates that the purpose of the hollow body in the electric guitar is to make the instrument lighter and to improve the appearance.

electric guitar; and that its "purpose * * * is to work through the electronic portions * * *."

Both witnesses indicated, in addition, that it is not uncommon for students to buy hollow-body electric guitars without the amplifying equipment. However, the unrefuted testimony of plaintiff's witness on this point was that in most such instances the student either had amplification equipment that he had purchased previously, or if he could not afford an amplifier, he would hook up an amplifying system whereby the instrument could be played through a television or radio set.

The record, in short, shows that the imported electric guitars differ from acoustical guitars in use, construction, tone and sound characteristics; that the imported guitars are not designed to be played without the use of the electronic amplifying equipment; that they can be played without amplification but are suitable when thus played only for practice; and that this is due to the fact that when played without amplification, their tonal quality is extremely poor.[2]

Coming now to the legal issue in the case, it is to be noted that prior to the effective date of the tariff schedules in August 1963, all guitars—electric or otherwise—were covered by paragraph 1541(a) of the Tariff Act of 1930 as "musical instruments." In the tariff schedules, however, the overall term "musical instruments" was split into several categories, including "stringed musical instruments" and "electronic musical instruments." See Schedule 7 *Tariff Classification Study*, *Explanatory Notes*, pp. 227–29. In turn, at the time here relevant, the term "electronic musical instruments" was (as we have seen) defined by headnote 2(c) to embrace (i) "all musical instruments in which the sound is generated electrically," and (ii) "conventional-type instruments not suitable for playing without electrical amplification, but * * * not includ[ing] conventional-type instruments, fitted with electrical pick-up and amplifying devices, when the instrument is suitable for playing without such amplification."

Against this background, we think it evident that the electric guitars in issue, whether solid body or hollow body, are "electronic musical instruments" within the meaning of this definition. For one thing, they are musical instruments in which the sound is generated electrically as distinguished from "conventional-type instruments" whose coverage under headnote 2(c) depends upon whether or not they are suitable for playing without amplification. This is to say that the imported electric guitars—designed as they are to operate through specially installed electronics—are separate and distinct instruments

---

[2] The hollow-body electric guitar has a slightly better tone, when played without amplification, than the solid-body type.

from the conventional-type guitars. Moreover, unlike the conventional-type guitar, in the electric guitar the desired sound for which the instrument is designed can only be produced electronically. And playing the conventional and the electric guitars side by side demonstrates without question that the sound produced electronically in the electric guitar is quite different from the sound produced naturally in the conventional-type guitar even if amplified.[3] But even assuming that the electric guitars in issue are "conventional-type instruments," the record shows that they are not suitable from a practical standpoint for playing without amplification. Not only are they not designed to be played without electronic amplifying equipment, their tonal quality when played in that fashion is so poor as to limit their use, without amplification, essentially to practice. In sum, we conclude that the two types of electric guitars here involved are properly classifiable as "electronic musical instruments" within the meaning of headnote 2(c) and item 725.45, rather than as "other stringed [musical] instruments" under item 725.06.[4]

This conclusion is confirmed by the subsequent legislative history of section 68 of the Technical Amendments Act of 1965 (Public Law 89–241, 79 Stat. 946) which—effective December 7, 1965—repealed item 725.45 covering "electronic musical instruments" and enacted new provisions, as follows:

Electronic musical instruments:

| | | |
|---|---|---|
| 725.46 | Fretted stringed instruments _____ | 34% ad val. |
| 725.47 | Other _____ | 17% ad val. |

The reason for this change was set out as follows in the House Ways and Means Committee Report on H.R. 12253 (H. Rept. 1728, 88th Cong., 2d Sess. (1964), p. 37):

SECTION 53. ELECTRONIC MUSICAL INSTRUMENTS

1. *Treatment under the old tariff schedules*

So-called electric guitars were dutiable under paragraph 1541 (a) of the old tariff schedules as stringed instruments at the rate of 34 percent ad valorem.

---

[3] A pickup and amplifier can be hung or "fitted" to a conventional-type guitar. That, it appears, would be the proper situation for applying the portion of the definition in headnote 2(c) dealing with "conventional-type instruments, fitted with electrical pick-up and amplifying devices, when the instrument is suitable for playing without such amplification." See the *Explanatory Notes to the Brussels Nomenclature*, Vol. III, pp. 1118, 1124.

[4] The Bureau of Customs itself—in a letter ruling dated May 27, 1964—held that *solid body electric guitars* were classifiable under the provision for "electronic musical instruments" in item 725.45, and not under the provision in item 725.06 for "other stringed [musical] instruments." T.D. 56438 (33), 100 Treas. Dec. 302. However, the Bureau held, in addition, that hollow-body electric guitars were classifiable under item 725.06 as "other stringed [musical] instruments" rather than under item 725.45 as "electronic musical instruments."

## 2. *Treatment under the tariff schedules of the United States*

Item 725.45 of the TSUS provides for all electronic musical instruments at the rate of 17 percent 'ad valorem. In view of the marked construction differences between electronic musical instruments and conventional-type instruments, all electronic musical instruments were provided for in a separate provision. This resulted, however, in a reduction in the rate of duty for electric guitars.

## 3. *Proposed changes*

Section 53 would restore the 34-percent ad valorem rate of duty to "fretted stringed instruments" (the term used in the bill to describe the electronic instruments in question).

The Senate Finance Committee Report on the bill stated (S. Rept. 530, 89th Cong., 1st Sess. (1965), p. 32) :

> *Section 70. Electronic musical instruments.*—This provision creates a separate category for "fretted stringed instruments" (a term which includes electric guitars) and provides a rate of 34 percent (instead of 17 percent). This restores the rate which applied to these electric guitars under the old tariff structure.

Thus, Congress made a legislative admission that prior to enactment of section 68 of the Technical Amendments Act of 1965, the tariff schedules provided for electric guitars (without distinction as to hollow body or solid body) as electronic musical instruments. See e.g., *Westfeldt Bros.* v. *United States*, 36 Cust. Ct. 112, 118, C.D. 1760 (1956) ; *John Horvath Company* v. *United States*, 59 Cust. Ct. 397, 404, C.D. 3174 (1967). Moreover, it confirmed that such electric guitars should stay within that provision—which it did by setting out a more detailed description of articles that had been covered by the broader term, and henceforth should pay a higher rate.

It is, of course, fundamental that the electric guitars in question must be classified under the provision in effect at the times of importation—March to November 1965—and not under the amendment effected by section 68 of the Technical Amendments Act of 1965 which became effective in December 1965. E.g., *Express Forwarding & Storage Co., Inc.* v. *United States*, 60 Cust. Ct. 511, 520, C.D. 3445 (1968). And at the times of importation, we hold for the reasons indicated that the importations were properly classifiable under item 725.45 as "electronic musical instruments" dutiable at 17 percent ad valorem.

The protests are sustained and judgment will be entered to that effect.